STATE of Wisconsin, Plaintiff-Respondent,

v.

Tony M. TURNER, Defendant-Appellant.

Court of Appeals

*No. 93–0468–CR. Submitted on briefs November 3, 1993.—Decided June 16, 1994.*

(Also reported in 521 N.W.2d 148.)

278

For the defendant-appellant the cause was submitted on the briefs of *Glenn L. Cushing*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   This is an appeal from a judgment convicting Tony M. Turner of three counts of first-degree sexual assault of a child and from an order denying postconviction relief. Turner asserts that because two jurors were hearing impaired and did not hear some of the testimony of two children, he was denied the right to an impartial jury and the right to a unanimous jury verdict. We agree with Turner's asser-

tion and, therefore, reverse on two of the counts and remand for a new trial.[1]

Sandra T. was eight years old at the time of the incidents giving rise to this prosecution,[2] and Michelle G. was ten. Both girls testified that Turner made them touch his penis, and Sandra T. testified that this occurred on two occasions. These incidents were the basis for the three counts of sexual assault with which Turner was charged. At trial, the girls testified that the assaults occurred, while Turner asserted that they did not. The jury convicted Turner of all three counts.

On twenty-three occasions during the trial, the court or the attorneys noted that the jury was having trouble hearing the girls. On the first occasion, the court told Michelle G.: "I believe you are going to have [to] try to speak up. Be really loud so all the people over there can hear you, okay?" The court then said: "Young lady, why don't you face the jury so your voice may carry better to them?" Shortly after this, while the jury was excused on another matter, the bailiff asked: "Is it possible for the little young lady to speak up louder because they haven't been able to hear, please[?]" Dur-

---

[1] The trial court provided a microphone and amplification system before one of the children testified as to count two of the information. Turner does not attack his conviction as to that count. We therefore affirm as to count two.

[2] Although the information indicates that Sandra was nine at the time the assaults occurred, the prosecution and the defense told the trial court that her correct birth date was exactly one year later than shown in the information. Sandra's testimony as to her age was consistent with counsel's representations. There was no prejudice to Turner as sexual contact or intercourse with a child under the age of thirteen years constitutes first-degree sexual assault of a child. Section 948.02(1), STATS.

ing direct examination of Michelle's sister, Rebecca, defense counsel asked that the fans be turned off, and the court said: "Can you folks hear? I'm afraid they're missing an awful lot of testimony." A short time later, the jury was again excused, and the bailiff noted: "They still can't hear." The court responded: "I don't know what we're going to do about it. We are going to have to get a loud speaker system, even if it isn't the children." After another recess, the court commented on the problem:

> For the record, it's obvious to counsel and to the court that the jury—jurors are having a problem understanding the testimony, or hearing the testimony of child witnesses.
>
> It is the court's position that this is unfair to the defendant. They can only hypothesize what the child is saying, and the record should reflect that the court's reporter has the capability of real time, which would permit the jurors to see it and have a sense of what the questions are and what the testimony is.

Turner and his attorney discussed this possibility, and agreed to its use, but the court concluded that jurors in the back row of the jury box could not read the court reporter's screen. The court noted that, based on comments from the bailiffs, there were at least two jurors who could not hear the testimony, and a number of them, possibly six, who were having difficulty hearing the testimony. Speaking of the jurors, the court said: "Two of them, for all [intents and] purposes are deaf, I guess, at least have hearing aids and cannot hear, unless they call my bailiffs liars. The serious question is whether there are some six of the jurors that missed a substantial portion of the testimony." In response to the district attorney's objections to a mis-

trial, the court said: "But I'm reluctant to have a case of this particular nature, to have the judge—jurors relying on collective memories of other people when they have no idea, under God's green earth, what was said."

Ultimately, the court ordered a *voir dire* of all of the jurors. Most of the jurors said that they had heard the testimony. One, when asked whether he had heard the testimony, replied: "Not the best, no." The court asked: "In other words, you were able to understand?" The juror responded: "Some of it, yes. . . . I wish I could understand better." A second juror testified: "I have had problems. . . . I heard some, not all."[3] But the juror felt that he had not missed so much that he could not reach a fair and impartial verdict based on what he had heard.[4] The court denied Turner's motion for a mistrial, and the case proceeded, using the newly acquired amplification system.

The parties differ as to which rights of a defendant are compromised when a deaf or hearing-impaired juror sits on a jury that returns a guilty verdict.[5] The State asserts that this appeal involves a question of due process of law. Turner contends that because two deaf jurors were seated, he was deprived of the rights to an impartial jury and a unanimous jury verdict.

---

[3] The trial court then found: "Now then, gentlemen, we are at the position where we have at least two out of the [thirteen] jurors, as I understand their statements, that they had problems, one had [a] problem hearing [Michelle G.], and [one] had trouble hearing the child, Rebecca, this morning."

[4] The difficulty with relying on a statement such as this is that a juror cannot assess the significance of something he or she did not hear.

[5] This case does not consider whether a deaf juror may be seated with an interpreter, computer-aided, real-time transcription, or other aids.

*Commonwealth v. Brown*, 332 A.2d 828 (Pa. Super. Ct. 1974), appears to be the leading case on the effect a hearing-impaired juror has on a trial. In *Brown*, the court concluded that a juror had a hearing impairment so great that it denied the defendant a fair, impartial trial and a unanimous verdict. *Id.* at 831. We agree that the issue may be examined under a due process analysis, as was done in *State v. Chestnut*, 643 S.W.2d 343 (Tenn. Crim. App. 1982), though the reason for that analysis was the defendant's assertion that she was denied due process because of sleeping jurors.

The facts of the cases which discuss the effect of a hearing-impaired juror on a verdict vary considerably. This is because the juror's degree of hearing impairment is not the same in all cases. In *Chestnut*, the court concluded that three jurors missed, at most, about five minutes in a three-day trial. The "missing" testimony was repeated by other witnesses. The court concluded that the trial court did not err by refusing to grant a mistrial because the "irregularity" was "innocuous." *Id.* at 347.

In *Holder v. State*, 556 P.2d 1049, 1053 (Okla. Crim. App. 1976), the court contrasted a juror's statement "that he had difficulty hearing the evidence" with the juror's response to the trial court's poll of the jury. The court concluded that the defendant did not show an infirmity amounting to a disability. *Id.* In *Roberts v. State*, 241 A.2d 903, 905 (Md. Ct. Spec. App. 1968), prior to opening argument, two jurors responded to the judge's questions by indicating that they had difficulty with their hearing. The defendant made no objection. The court concluded that the defendant had waived an objection to the juror's alleged hearing impairment. *Id.* at 906.

But in *State v. Berberian*, 374 A.2d 778, 782 n.4 (R.I. 1977), the court quoted extensively from the record to show that when questioned, a juror's answers indicated that he misunderstood or did not hear many of the judge's questions. The court determined that the defendant's right to a jury trial, guaranteed by the Sixth Amendment to the United States Constitution, had been violated. *Id.* at 782. And in *State v. Miller*, 722 P.2d 1131, 1133-34 (Kan. Ct. App. 1986), the court based its decision to order a new trial because of a deaf juror, on a Kansas statute giving the trial court the discretion to excuse jurors who were "physically or mentally infirm."

We conclude that article I, section 7 of the Wisconsin Constitution, which guarantees an "impartial jury," and the Sixth and Fourteenth Amendments to the United States Constitution, which guarantee an "impartial jury" and "due process of law," require that a criminal defendant not be tried by a juror who cannot comprehend testimony. Whether a criminal defendant has received a fair trial is a constitutional question which we review *de novo. See State v. Turley*, 128 Wis. 2d 39, 47, 381 N.W.2d 309, 313 (1986). But we review underlying findings of fact by the trial court deferentially, and reverse only if they are clearly erroneous. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). This is particularly important in cases asserting the presence of a hearing-impaired juror because it will almost always be the case that a juror will not be totally deaf. The trial court will always have to determine, as in *Chestnut*, 643 S.W.2d at 347, the extent of testimony not heard. But, once it is determined that a juror missed material testimony which bears on a defendant's guilt or innocence,

prejudice must be assumed "for the sake of insured fairness." *Brown*, 332 A.2d at 832. In this case, the trial court found that two of the jurors did not hear the testimony. We accept that finding because it is not clearly erroneous.

The credibility of a witness is determined by more than a witness's words. Tonal quality, volume and speech patterns all give clues to whether a witness is telling the truth. *See Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 547-48, 173 N.W.2d 619, 626-27 (1970) (written record incapable of conveying total meaning of trial judge). Thus, it was critical for each juror to hear the testimony from each witness and relate that testimony to the witness's demeanor. We therefore reject the State's contention that putting all the witnesses together resulted in the jury getting enough evidence to fairly judge Turner. There is little question that at least one juror did not hear the testimony of all witnesses. We conclude that Turner's federal and state constitutional rights to an impartial jury and due process were infringed when either one or two jurors were unable to hear the testimony of material witnesses. Therefore, it is necessary that a new trial be held as to counts one and three.

As to count two, Turner does not contest that a microphone and amplifier were brought in before the testimony on that count was presented. There is no indication that with amplification, the two jurors were still unable to hear. There is no need for a new trial on count two.

*By the Court.*—Judgment and order pertaining to counts one and three reversed and cause remanded for

further proceedings. Judgment and order pertaining to count two affirmed.