STATE of Wisconsin, Plaintiff-Respondent,

v.

Gary HAMPTON, Defendant-Appellant.

Court of Appeals

*No. 95–0152–CR. Submitted on briefs March 5, 1996.—Decided April 16, 1996.*

(Also reported in 549 N.W.2d 756.)

For the defendant-appellant the cause was submitted on the briefs of *Michael S. Holzman* of *Rosen and Holzman Ltd.* of Waukesha.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

WEDEMEYER, P.J. Gary Hampton appeals from a judgment of conviction after a jury found him guilty of two counts of armed robbery, party to a crime, contrary to §§ 943.32(1)(b) and (2) and 939.05, STATS.

Hampton claims that his right to an impartial jury and due process under both the Wisconsin and United States Constitutions was violated when the trial court refused to voir dire a juror who was sleeping during the testimony of a witness. Because the trial court erroneously exercised its discretion by failing to conduct a hearing as to the nature and extent of the juror's inattention, we remand with directions.

## I. BACKGROUND

In considering Hampton's claims, we recite only the procedural posture which is undisputed and determinative of his challenge.

A jury convicted Hampton of two counts of armed robbery, party to a crime. Victims, Dana Johnson and Roya Johnson, identified Hampton as one of three individuals who robbed them at gun point on the evening of October 22, 1993, in Dana Johnson's residence. During the trial, both victims again identified Hampton as one of the three perpetrators. Among other witnesses, the State presented Milwaukee Police Detective Thomas Glasnovich. He testified that during Dana's initial interview, which occurred shortly after she reported the robbery, Dana identified Hampton by name and described him as a 6' 3" tall, thin, 165 lb. male with black hair, brown eyes, dark complexion, possibly chipped teeth and facial scars, wearing a three-quarter length black coat, dark jeans, and a black bandanna. Dana also described a second suspect, the gunman, as wearing a blue bandanna, a green and orange colored windbreaker and blue jogging pants.

Glasnovich explained that Hampton was arrested and soon after was identified by Dana on the street outside of his place of residence. Glasnovich testified that he found certain items allegedly stolen from Dana in Hampton's residence, but no fingerprints were found on any of the items recovered.

On cross-examination, Glasnovich conceded that Hampton reasonably appeared to weigh 205 lbs. versus the 165 lbs. as estimated by Dana. He also stated that in searching Hampton's residence, he did not find all of the clothing that Dana said the gunman had worn.

Hampton's theory of defense was that he had gone to Dana's residence to pay a debt and to buy some cocaine and that he had left before the robbery took place. He further claimed to have purchased the stolen items referred to above from strangers on the street. Hampton's defense also focused on challenging Dana's credibility regarding her identification of him.

After Glasnovich completed his testimony in chief, in the absence of the jury, the following colloquy took place:

THE COURT: Any further witnesses for the state?

[PROSECUTOR]: No, the state rests subject to rebuttal.

THE COURT: At this point, Ladies and Gentlemen of the jury, we will take a very brief recess. I need to take up some legal matters with the attorneys before we can continue with the trial. So you will remain in the jury room, please. We will call you back in just a few minutes.

(Jury is not present.)

. . . .

THE COURT: [Defense Counsel], are you joining in that motion [to dismiss] on behalf of your client?

[HAMPTON'S COUNSEL]: Yes, Your Honor. I would join in the motion and also move for mistrial based on the fact it appeared as though one of the jurors was sleeping and not listening during the testimony of Officer Glasnovich.

[PROSECUTOR]: If that is true that should have been raised during the testimony so that the court could have addressed it.

THE COURT: He did pass a note up to me, and I observed [the juror] Mr. Blue and he was awake at the time that I observed him. It is clear that Mr. Blue was drowsy during the testimony and

his eyes were dropping shut and then opening up again. I am having one of the bailiffs talk to him about whether he needs some coffee or something to keep him awake this afternoon. But he was not sleeping through the entirety of the testimony.

[HAMPTON'S COUNSEL]: Your Honor, I would ask the Court to voir dire Mr. Blue right now and ask him if during the testimony of Officer Glasnovich if in fact he heard what the testimony was or if he was dozing off and not listening or paying attention because that certainly appears to and that was over a period of at least 10 minutes.

THE COURT: He wasn't dozing for 10 minutes.

[HAMPTON'S COUNSEL]: Well, Your Honor, this is before I even brought it to the court's attention.

THE COURT: I was watching the jury too, [Defense Counsel]. It is clear that he was not dozing for a period of time as long as 10 minutes. It is clear that he is drowsy. There is no basis for a mistrial. There is no reason to voir dire him on that. I am having the bailiff speak to him about whether he needs something to take care of his drowsiness. The motions for dismissal are denied at this point. The case has been made sufficiently to present it to the jury for deliberation.

Although the trial court denied the "motions for dismissal" it did not specifically address the motion to question the suspect juror. It is this exchange which serves as the genesis of Hampton's appeal.

Hampton claims his right to an impartial jury and a fair trial under Article I, Section 7 of the Wisconsin Constitution and the Sixth and Fourteenth

Amendments to the United States Constitution was violated when he was tried by a sleeping juror.[1]

## II. DISCUSSION

■

Article I, § 7 of the Wisconsin Constitution, guaranteeing an impartial jury, and the Sixth and Fourteenth Amendments to the United States Constitution, guaranteeing an impartial jury and due process, require that a criminal not be tried by a juror who cannot comprehend the testimony. *State v. Turner*, 186 Wis. 2d 277, 284, 521 N.W.2d 148, 151 (Ct. App. 1994).[2] It is logical to conclude that implied in the concept of assuring an impartial jury is the presence of jurors who have heard all of the material testimony. The absence of this condition, whether it is due to a hearing deficiency or a state of semi-consciousness, could imperil the guarantees of impartiality and due process.

This is an issue of first impression in Wisconsin. No reported Wisconsin case has addressed the consequences of a juror who is alleged to be sleeping

---

[1] Trial counsel, in his motion for a voir dire of the suspect juror and for mistrial, claimed that the juror was sleeping. The trial court disputed the characterization, but conceded that the juror "was not sleeping through the entirety of the testimony" and was "dozing." WEBSTER'S INTERNATIONAL DICTIONARY 683 (1976) defines dozing as "a light sleep." Thus, for the purposes of our analysis, we treat the terms as synonymous in meaning—differing only in degree. ˙

[2] In *State v. Turner*, 186 Wis. 2d 277, 279-80, 521 N.W.2d 148, 149 (Ct. App. 1994), we concluded that the accused's federal and state constitutional rights to an impartial jury and due process were infringed when either one or two jurors were unable to adequately hear the testimony of a material witness.

during a trial. A search of other jurisdictions that have confronted the problem of juror inattentiveness through various degrees of sleepiness reveals several categories of consideration.

■

In the first group of reported cases, the complaining party was deemed to have waived any objection to a sleeping juror because the objection was untimely.[3] The second group of cases found lack of specificity as to when and how long the inattentiveness of the juror occurred.[4] The third group of cases involved "informed judicial knowledge," i.e., when the trial court actually observed the challenged conduct of the juror. In these instances, the trial court has taken judicial notice in determining whether the juror was asleep.[5] A fourth group consists of instances when a hearing was ordered.[6] Regardless of how any of the reported cases

---

[3] *See U.S. v. Curry*, 471 F.2d 419 (5th Cir.), *cert. denied*, 411 U.S. 967 (1973); *U.S. v. Carter*, 433 F.2d 874 (10th Cir. 1970); *Cotton v. State*, 639 So. 2d 577 (Ala. Ct. App. 1993); *Trenor v. State*, 313 S.E.2d 482 (Ga. 1984); *Chubb v. State*, 640 N.E.2d 44 (Ind. 1994); *State v. Henderson*, 355 N.W.2d 484 (Minn. Ct. App. 1984).

[4] *See, e.g., U.S. v. Newman*, 982 F.2d 665 (1st Cir. 1992), *cert. denied*, 114 S. Ct. 59 (1993).

[5] *See U.S. v. Holder*, 652 F.2d 449 (5th Cir. 1981); *Curry*, 471 F.2d 419; *Carter*, 433 F.2d 874; *People v. Hanes*, 596 P.2d 395 (Colo. Ct. App. 1978), *aff'd*, 598 P.2d 131 (Colo. 1979); *Owens v. State*, 445 S.E.2d 818 (Ga. Ct. App. 1994); *Commonwealth v. Jones*, 461 A.2d 267 (Pa. 1983).

[6] *See U.S. v. Barrett*, 703 F.2d 1076 (9th Cir. 1983); *People v. Valerio*, 529 N.Y.S.2d 350 (N.Y. 1988); *People v. Russell*, 492 N.Y.S.2d 420 (N.Y. 1985); *State v. Reevey*, 387 A.2d 381 (N.J. 1978); *cf.* A.C. Barnett, Annotation, *Inattention of Juror from Sleepiness or Other Cause as Ground for Reversal or Mistrial*, 88 A.L.R.2d 1275, 1275-84 (1963).

are classified for disposition purposes, it is universally recognized that before inattentiveness warrants a mistrial, there must be a determination regarding prejudice.[7] If the inattentiveness was not prejudicial, the defendant is not entitled to a mistrial. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985).

How to proceed when faced with an assertion of jury inattentiveness is determined by the trial court's informed discretion. *See United States v. Barrett*, 703 F.2d 1076, 1082-83 (9th Cir. 1983). To determine whether the trial court properly exercised its discretion in a particular matter, we will look first to the court's on-the-record explanation of the reasons underlying its decision. If that explication indicates that the court examined the facts of the case and reasoned its way to a conclusion that is: (a) one a reasonable judge could reach and (b) consistent with applicable law, we shall affirm even if it is not one with which we ourselves agree. *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991). With these precedents and precepts as a guide, we examine the record before us.

From our review, we conclude that Hampton's objections to the sleeping juror were timely as evidenced by the trial court's response to the district attorney's objection to the lack of timeliness: "he [defense counsel] did pass a note up to me and I observed [the juror]." The requirement of specificity

---

[7] *See People v. Evans*, 710 P.2d 1167 (Colo. Ct. App. 1985) (no prejudice shown); *Fleener v. Orkin Exterminating Co., Inc.*, 560 N.E.2d 1257 (Ind. Ct. App. 1990) (no prejudice shown); *State v. Chestnut*, 643 S.W.2d 343 (Tenn. Ct. App. 1982) (no prejudice shown); *cf.* Barnett, *supra*, note 6, 1275-84.

was met in that the objection occurred both during and immediately after the conclusion of Detective Glasnovich's testimony; thus, the trial court was afforded the opportunity to directly address the threat to impartiality and resultant prejudice. Left unanswered, however, is whether the trial court properly exercised its discretion in addressing the issue of impartiality and prejudice.

The contents of the colloquy between the trial court and defense counsel when the motions for mistrial and voir dire of the juror were made leave little room for disagreement. The juror was sleeping, the extent of which, however, is unknown. Defense counsel claimed the juror was "dozing off and not listening or paying attention . . . over a period of at least ten minutes." The trial court responded: "He wasn't dozing for ten minutes . . . I was watching the juror too . . . . It was clear that he was not dozing for a time as long as ten minutes. It is clear he was drowsy." The trial court then announced it would have the bailiff speak to the juror to determine whether he needed "something to take care of his drowsiness." The trial court then denied defendant's motion.

In reviewing the authority from other jurisdictions which covers this subject matter we find no case which stands on "all fours" with our fact situation. We are, however, persuaded by the logic and methodology articulated in *Barrett*, and *State v. Chestnut*, 643 S.W.2d 343, 346 (Tenn. Ct. App. 1982).

In *Barrett*, a juror asked to be excused because he admitted sleeping during the trial. *Barrett*, 703 F.2d at 1082. Post-verdict, the defendant filed a motion to interview the juror. *Id.* In denying the motion, the trial court found as a fact that "there was no juror asleep during the trial. I watched the jurors constantly. Of

671

course, I can't tell whether some of them might have felt drowsy." *Id.* at 1082-83. On review, the United States circuit court declared "[w]e do not believe . . . that under the particular circumstances of this case, the trial judge could properly take judicial notice of the fact that 'there was no juror asleep during this trial' without making further inquiry into the matter." *Id.* at 1083. *Barrett* made a particular point in distinguishing between an admission by a juror of sleepiness and a claim by the defendant that a juror was sleeping. *Id.* The court concluded by holding "that in failing to conduct a hearing or make any investigation into the 'sleeping'-juror question, the trial judge abused his considerable discretion in this area." *Id.*

In *Chestnut*, the Tennessee Criminal Court of Appeals examined a challenge where the trial court interrupted the trial after observing three jurors fighting sleep. *Id.*, 643 S.W.2d at 346. In affirming the trial court's denial of a motion for a new trial, after reviewing the applicable authority, the *Chestnut* court stated that where there is a "sufficient showing that a juror had been asleep during the course of the trial the courts have universally taken the view that it must be demonstrated that as a result of the lack of attention, the juror failed to follow some important or essential part of the proceedings." *Id.* Germane to this determination is the "length of time during which the juror slept and the importance of the evidence, if any, which was taken during this period." *Id.*[8] Thus, it is reasonable to conclude that if there is a sufficient showing of juror inattentiveness, the appropriate

[8] *Cf. Commonwealth v. Greiner*, 455 A.2d 164 (Pa. 1983) (same methodology that was used in *Chestnut*, 643 S.W.2d 343 adopted in this case with respect to a hearing impaired juror).

672

remedy is to engage in a fact finding process to establish a basis for the exercise of discretion.

■

Based on our review of the record, the *Turner* case, and respected authority from other jurisdictions, we conclude that the responsibility of the trial court to assure the impartiality of the jury and due process is of such paramount importance that when it is conceded that a juror was sleeping, summarily foreclosing further inquiry is an erroneous exercise of trial court discretion. We conclude that there is a sufficient demonstration of juror sleepiness in the instant case to warrant further inquiry and determination of the trial court. The trial court's ratiocination is not consistent with constitutional guarantees and other cited precedent and, therefore, was error.

We therefore remand with instructions that the trial court conduct a hearing to determine: the extent or length of time of the inattentiveness, the importance of the testimony missed, and, whether such inattention prejudiced Hampton to the extent that he did not receive a fair trial.[9] After the hearing, the trial court should remit its findings and conclusions along with a copy of the hearing transcript to this court. We shall

---

[9] Both parties in their brief address the significance of Detective Glasnovich's testimony as to whether Hampton may have been prejudiced by the juror's state of sleep. The trial court, however, never made a finding in this regard. We will not usurp the trial court's fact-finding function. *Wisconsin State Employees Union v. Henderson*, 106 Wis. 2d 498, 501-02, 317 N.W.2d 170, 171-72 (Ct. App. 1982). This function is left to the trial court, which is in a far more advantageous position to make this determination as well as the other determinations referenced in the text of this opinion.

retain jurisdiction pending receipt of the trial court's findings and conclusions.

*By the Court.*—Judgment remanded with directions.