STATE of Wisconsin, Plaintiff-Respondent,

v.

James T. KETTNER, Defendant-Appellant.†

Court of Appeals

*No. 2011AP85–CR. Submitted on briefs August 9, 2011.
—Decided September 15, 2011.*

2011 WI App 142

(Also reported in 805 N.W.2d 132.)

† Petition for Review denied 12/14/11.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrew R. Hinkel,* assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Vergeront, Sherman and Blanchard, JJ.

¶ 1. VERGERONT, J. James Kettner appeals the judgment of conviction for child abuse contrary to WIS. STAT. § 948.03(2)(b) (2009–10)[1] and the order denying his motion for postconviction relief. Kettner presents two issues. First, he contends his constitutional rights to an impartial jury and to due process were violated because a juror was unable to hear most of the answers of the victim on the videotaped interview presented at trial. We conclude there was no violation because the victim also testified at trial, her trial testimony was consistent with her videotaped answers, and Kettner does not identify any prejudice resulting from the juror's inability to hear the videotaped answers. Second, Kettner contends the circuit court erroneously allowed testimony vouching for the victim's credibility. Assuming without deciding there was error, we conclude it was harmless. Accordingly, we affirm.

## BACKGROUND

¶ 2. The criminal complaint alleged as follows. Kettner's ten-year-old daughter, S.K., told the investigating officers that her father had given her a spanking two days before that had caused bruising to her buttocks. The pediatric nurse who examined her opined that there was significant bruising on her buttocks that

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

was most consistent with abuse. Kettner admitted that he spanked S.K. with his hand, but he asserted that his spanking did not cause the bruising. The bruising occurred, he asserted, when, two days before the day of the spanking, S.K. spent the day riding in the "bucket" of an all-terrain vehicle (ATV).

¶ 3. At trial the State presented a video recording of S.K. being interviewed by a social worker a week after the spanking. S.K. also testified in person at the trial. In both the recorded interview and her trial testimony she stated that her father became angry with her because of her use of the cell phone, and he spanked her on her bottom with his hand while she lay over his knee. She did not remember how many times he hit her but it was more than once. After it happened, she looked in the mirror because it hurt and saw that her bottom was red and bruised.

¶ 4. The pediatric nurse who examined S.K. testified that in his opinion the injuries on her buttocks were consistent with a spanking or whipping with a hand or object, and it was unlikely they were caused by riding in a cart behind an ATV. On redirect, over Kettner's objection, the State was permitted to ask the nurse why he relied on S.K.'s account in arriving at his conclusion on the cause of the bruises. We provide more detail on this issue later in the opinion.[2]

¶ 5. Kettner testified in his own defense. His defense was that the spanking he gave S.K. was reasonable discipline for breaking rules he had established regarding cell phone use, and the spanking he gave— one spank, not hard, on her buttocks over her pants— could not have caused the bruising. In support of his

---

[2] Other State witnesses were the interviewing social worker, the investigating officers, and S.K.'s mother.

contention that the bruising could have been caused by S.K.'s riding on the back of or in the cart of an ATV, Kettner called his girlfriend's mother and his girlfriend's aunt, who owned the properties where S.K. had engaged in this activity during the two days before the day of the spanking.[3] The defense also suggested through cross-examination of S.K. and through Kettner's testimony that S.K. had made up the story that his spanking had caused the bruising because she wanted to be able to live with her mother instead of with him.

¶ 6. The jury returned a verdict of guilty. Just after the court excused the jurors, one of the jurors told the court that the device available for the hearing impaired "[wasn't] enough" and she had some difficulties hearing. The defense counsel stated he would like to ask the juror some questions, to which the court responded, "you can follow up with that if you want." Both parties then agreed the court could accept the verdict, which the court did.

¶ 7. The court withheld sentence and placed Kettner on three years' probation.

¶ 8. Kettner filed a postconviction motion for a new trial, asserting that the juror who spoke to the court upon return of the verdict was unable to hear significant portions of the testimony. After hearing this juror's testimony at an evidentiary hearing, the circuit court denied the motion.

---

[3] The testimony on where on the ATV S.K. was riding variously describes her riding in "a cart or the back" of an ATV, "a bucket in the back" of an ATV, "a metal rack" on the back for cargo, and "both the front and the back rack" of the ATV. The distinction in these descriptions is not relevant to our opinion. We use the term "on the back of or in the cart of an ATV" to encompass these descriptions.

¶ 9. In making its decision, the court made numerous factual findings, which included the following. On the day of the trial, the juror was wearing her hearing aids and they were working. After the videotape of the interview of S.K. was played to the jury, the juror stated that she had a hearing problem. The bailiff provided her with a device to aid her hearing, which she used for the rest of the trial. She was able to hear substantially all of the trial testimony of all of the witnesses, substantially all the comments and arguments made by attorneys, substantially all the comments and instructions made by the court; and she participated in the jury deliberations as a competent, credible, and impartial juror. However, "she missed most of the testimony from [S.K.] that took place on the video and some of the questions [the social worker] asked [S.K.] on the video."

¶ 10. Based on its factual findings and considering "the posture of the case made by the defense, the fact that [S.K.] testified in the courtroom and that that testimony was heard by this juror including the cross-examination and the direct examination," the court concluded that Kettner's constitutional rights to an impartial jury and to due process of law were not violated.

## DISCUSSION

¶ 11. On appeal Kettner contends he is entitled to a new trial on two independent grounds: (1) his constitutional rights to an impartial jury and to due process were violated because the juror was unable to hear S.K.'s answers on the videotape; and (2) the pediatric nurse's testimony explaining why he relied on S.K.'s

account of what occurred was inadmissible under *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984).

I. Hearing-Impaired Juror

¶ 12. The right to an impartial jury, guaranteed by Article I, section 7 of the Wisconsin Constitution and the Sixth Amendment to the U.S. Constitution, and the right to due process, guaranteed by the Fourteenth Amendment, both include the right of a criminal defendant not to be tried by a juror who cannot comprehend testimony. *State v. Turner*, 186 Wis. 2d 277, 284, 521 N.W.2d 148 (Ct. App. 1994). Whether this right has been violated is a question of law, which we review de novo, but in our review we accept the factual findings of the circuit court unless they are clearly erroneous. *Id.* (citations omitted).

¶ 13. In *Turner* we concluded that the defendant's constitutional right to an impartial jury and to due process were infringed when either one or two jurors were unable to hear the testimony of material witnesses. *Id.* at 285. Kettner relies on *Turner*, arguing that S.K.'s testimony was material because she was the alleged victim and she described the alleged crime in the videotaped interview. In particular, Kettner relies on our statement in *Turner* that "once it is determined that a juror missed material testimony which bears on a defendant's guilt or innocence, prejudice must be assumed 'for the sake of insured fairness.' " *Id.* at 284–85 (citation omitted).

¶ 14. The State responds that *Turner* is factually distinguishable because here we can compare the missed testimony from the videotape to S.K.'s in-court testimony, which the juror heard. The State points out that Kettner does not argue that there were material

questions asked and answered by S.K. on the videotape that were not asked and answered at trial; nor does Kettner argue that S.K. responded to the material questions on the videotape with different answers than she gave to the same questions at trial. Therefore, the State contends, the juror heard all S.K.'s answers to the material questions and there was no violation of Kettner's constitutional rights.[4]

---

[4] The State argues that Kettner forfeited the right to pursue the issue of the hearing-impaired juror by postconviction motion because he could have raised it during trial or just after the return of the verdict. However, for the following reasons, we reject this argument.

The State raised the forfeiture issue in the circuit court in its brief responding to Kettner's postconviction motion. When defense counsel asked at the hearing if he should respond to the "waiver" argument, the court responded "No. You don't have to argue waiver because I agree with your position on that." (The correct term in this context is "forfeiture," not "waiver," although the terms are commonly used interchangeably. *See State v. Ndina*, 2009 WI 21, ¶¶ 28–30, 315 Wis. 2d 653, 761 N.W.2d 612.) When the prosecutor's turn for argument came, the prosecutor did not mention anything about forfeiture; in particular, the prosecutor did not ask to be heard on the issue. The State in its appellate brief suggests the circuit court was not "willing" to hear argument on this issue and the State now presents the arguments it states it "could have [made]" had the court been "willing to entertain argument."

We do not agree that the circuit court's comment that it did not need to hear from defense counsel on this issue foreclosed the prosecutor from asking to address it. Because the State did not indicate during its argument to the circuit court at the postconviction hearing that it wanted to address the forfeiture issue, we will not take up this issue on appeal. *See State v. Johnson*, 184 Wis. 2d 324, 345, 516 N.W.2d 463 (Ct. App. 1994) ("[A] party must raise and argue an issue with enough prominence to signal to the trial court that it is being called upon to address an issue and make a ruling." (citation omitted)). This

¶ 15. We agree with the State that, while *Turner* provides the foundation for our analysis, it does not address the issue presented by the facts of this case. Therefore, as we explain in the following paragraphs, we consider subsequent case law concerning sleeping jurors to arrive at the proper analysis for the situation before us—in which the circuit court's findings, the videotape, and the trial transcript make clear what testimony the juror did and did not hear. Ultimately, we conclude that Kettner was not prejudiced by the juror's inability to hear S.K.'s answers on the videotape and therefore his rights to an impartial jury and due process were not violated.

¶ 16. In *Turner* there were twenty-three occasions during the trial when the circuit court or the attorneys noted that the jury was having trouble hearing the child witnesses. *Turner*, 186 Wis. 2d at 280. Upon the defendant's motion for a mistrial, the court conducted a voir dire of all the jurors. *Id.* at 282. The court found that one juror "had [a] problem hearing" one of the child victims and another juror "had trouble hearing" that child's sister. *Id.* at 282 n.3 (alteration in original). However, the court denied the motion for a mistrial and continued the trial using an amplification system. *Id.* at 282.

¶ 17. The circuit court in *Turner* did not make any findings on what part of the two witnesses' testimony was not heard by any juror. Because of that, we did not analyze the specific testimony the jurors did not hear and the impact of their not hearing that testimony on the defendant's constitutional rights. Instead, we noted that

general rule is particularly applicable in this case, where the State's argument that Kettner forfeited the right to raise this issue depends upon interpreting ambiguous portions of the trial transcripts, including the circuit court's own statement.

the two witnesses were material and, implicitly, we assumed prejudice from the inability of at least one juror to hear the testimony of one of those two witnesses. *See id.* at 284–85. We noted the difficulty on the record before us in determining the significance of the testimony the jurors did not hear.[5] *Id.* at 282 n.4.

¶ 18. Kettner contends that under *Turner* a defendant is entitled to a new trial whenever a juror does not hear material testimony. Kettner refers us to BLACK'S LAW DICTIONARY for two definitions of "material," the first broader than the second: (1) "[h]aving some logical connection with the consequential facts"; and (2) "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." BLACK'S LAW DICTIONARY 1066 (9th ed. 2009). Kettner argues that under either definition, S.K.'s statements in the video were material.

¶ 19. Although we did not define the term "material" in *Turner*, it is evident that we were using the second, narrower of the two definitions given above. The assumption of prejudice to the defendant's constitutional rights to an impartial jury and due process would not be warranted if the testimony not heard simply had "some logical connection with the consequential facts."

---

[5] Our statement in *State v. Turner*, 186 Wis. 2d 277, 284–85, 521 N.W.2d 148 (Ct. App. 1994)—"once it is determined that a juror missed material testimony which bears on a defendant's guilt or innocence, prejudice must be assumed 'for the sake of insured fairness' "—came from *Commonwealth v. Brown*, 332 A.2d 828, 832 (Pa. Super. Ct. 1974). In *Brown*, the record reflected that a juror had significant difficulty hearing but, as in *Turner*, there was little testimony and no findings by the circuit court on what testimony the juror had not heard. *See Brown*, 332 A.2d at 831–32.

¶ 20. Employing the narrower definition of "material," we agree with Kettner that, when the recorded interview is viewed in isolation, many of S.K.'s answers are material. That is, viewed in isolation, they are essential to the determination of Kettner's guilt or innocence because they would affect the jury's determination. However, we do not agree with Kettner that this ends the inquiry in this case.

¶ 21. In this case the circuit court was able to, and did, make findings of fact on what the juror did not hear. We are therefore presented with an issue not presented in *Turner*. Kettner does not offer a rationale for assuming prejudice when, as here, the circuit court and this court are able to assess the significance of what the juror did not hear in light of the testimony the juror did hear. And we are unable to see a rationale for assuming prejudice in this case without further inquiry.

¶ 22. Because *Turner* does not resolve the issue presented by this case, we turn to two decisions that, in the context of a sleeping juror, built on *Turner*: *State v. Hampton*, 201 Wis. 2d 662, 549 N.W.2d 756 (Ct. App. 1996) (*Hampton I*), and *State v. Hampton*, 217 Wis. 2d 614, 579 N.W.2d 260 (Ct. App. 1998) (*Hampton II*).

¶ 23. In *Hampton I* we began our analysis with the principle established in *Turner* that the constitutional guarantees of an impartial jury and of due process "require[d] that a criminal [defendant] not be tried by a juror who cannot comprehend the testimony." *Hampton I*, 201 Wis. 2d at 668 (citing *Turner*, 186 Wis. 2d at 284). Elaborating on this principle, we stated: "It is logical to conclude that implied in the concept of assuring an impartial jury is the presence of jurors who have heard all of the material testimony. The absence of this condition, whether it is due to a hearing deficiency or a state of semi-consciousness, could imperil the guarantees of

impartiality and due process." *Id.* After surveying the decisions from other states on sleeping jurors, we concluded that "it is universally recognized that . . . there must be a determination regarding prejudice. If the inattentiveness is not prejudicial, the defendant is not entitled to a mistrial." *Id.* at 670 (footnote and citations omitted).

¶ 24. After establishing this principle in *Hampton I*, we took up the proper disposition on the facts before us. Defense counsel had moved for a mistrial at the close of the State's case based on his observation that a juror appeared to be sleeping during one of the witness's testimony. *Id.* at 666. The circuit court acknowledged that the juror was drowsy but disagreed that he was sleeping for ten minutes, as defense counsel asserted, and denied the motion without questioning the juror. *Id.* at 667. We concluded that there was "a sufficient demonstration of juror sleepiness in the instant case to warrant further inquiry and determination of the [circuit] court," and that the circuit court had erred in not doing so. *Id.* at 673. We remanded with instructions to the circuit court to conduct a hearing to determine "the extent or length of time of the inattentiveness, the importance of the testimony missed, and, whether such inattention prejudiced [the defendant] to the extent that he did not receive a fair trial." *Id.*

¶ 25. In *Hampton II*, the appeal after remand, the defendant challenged the circuit court's determination that the juror's inattentiveness was insignificant and that no prejudice occurred as a result.[6] In affirming the circuit court and concluding that the defendant's con-

---

[6] Although the context of the motion regarding the sleeping juror was a motion for mistrial, which is committed to the circuit court's discretion, we explained in *Hampton II* that our standard of review on the constitutional issue was the same as

stitutional rights had not been violated, we stated: "Because the nature of [the testimony of the State's witness during which the juror was drowsy or actually sleeping] was not pivotal to the State's case, [the juror's] brief inattentiveness during this testimony was not prejudicial to the defense."[7] *Hampton II*, 217 Wis. 2d at 624.

¶ 26. Our conclusion in *Hampton II* that the witness's testimony was not pivotal to the State's case rested on our analysis that it was "fairly corroborative and cumulative" to the testimony of other police witnesses and that it provided undisputed facts. *Id.* at 623. We also noted that, according to the circuit court's finding, the missed testimony came during the direct examination of the witness, not the cross-examination during which defense counsel established points favorable to the defense. *Id.* at 624 n.3.

■

¶ 27. *Hampton I* and *Hampton II* are instructive because, although they concern a sleeping juror, not a hearing-impaired juror, the fundamental inquiry is the same: are the defendant's constitutional rights to an impartial jury and due process violated when a juror does not hear particular testimony? Reading *Hampton I* and *Hampton II* together with *Turner*, we conclude that, when it is feasible to determine what testimony

in *Turner*: acceptance of the circuit court's findings of fact unless they were clearly erroneous and review de novo whether, based on those findings, the defendant's constitutional rights were violated. *State v. Hampton*, 217 Wis. 2d 614, 621, 579 N.W.2d 260 (Ct. App. 1998) (*Hampton II*).

[7] The circuit court found, and we accepted the finding as not clearly erroneous, that the juror had been drowsy for approximately ten minutes and actually fell asleep for only one or two minutes. *Hampton II*, 217 Wis. 2d at 622.

the juror did not hear, the proper inquiry is whether, given the length of time the juror did not hear testimony and the significance of the testimony not heard in the context of the trial as a whole, the defendant was prejudiced to the extent he or she did not receive a fair trial—that is, a trial comporting with the constitutional guarantees of an impartial jury and due process.[8] *See Hampton I*, 201 Wis. 2d at 673.

¶ 28. We now turn to the facts in this case. Kettner does not argue that the court's findings of fact are clearly erroneous, and we therefore accept them. Based on the court's findings, the testimony the juror did not hear consisted of all S.K.'s answers on the videotape and some of the social worker's questions on the videotape; however, the juror heard "substantially all" of the in-court testimony of both. On the videotape, the social worker begins the interview by describing what she was going to do and asks S.K. a number of questions in an effort to make S.K. comfortable and draw her out. The social worker described this preliminary procedure— her usual procedure—in her in-court testimony. In the interview, the social worker then asked questions that elicited an account from S.K. of the spanking incident

[8] The circuit court, in concluding that Kettner's constitutional rights were not violated, concluded that the testimony the juror could not hear on the videotape was not "material." We understand the circuit court to mean that Kettner was not prejudiced by the juror's inability to hear all S.K.'s answers and some of the social worker's questions on the videotape, given that the juror was able to hear substantially all the testimony at trial, including the in-court testimony of S.K. and the social worker. Thus, the circuit court engaged in essentially the same analysis we adopt here, although the court phrased it in terms of materiality.

and the events two nights later when she called her mother and her mother called the police.[9]

¶ 29. Kettner does not argue that there is any inconsistency between these events as S.K. described them in the interview and as she described them at trial. We have carefully reviewed the videotape and S.K.'s trial testimony and do not see any. Kettner also does not argue that any question asked by the social worker in the interview (which the juror might not have heard, given the court's finding that the juror did not hear some of the social worker's questions) was significant in assessing either S.K.'s answers in the interview or her testimony at the trial.

¶ 30. Kettner acknowledges the State's point that the juror was able to assess S.K.'s general demeanor in the videotape. Indeed, the juror described S.K. as "nervous" in the interview and as older and more confident at the trial. However, Kettner argues, the juror was not able to attach a particular demeanor to each answer she gave at the interview. According to Kettner, hearing the substance of those answers at trial is not a substitute for the additional information that could have been gained from hearing the answers in the interview in the context of S.K.'s particular demeanor when giving a particular answer.

¶ 31. In making this argument, Kettner relies on *Turner*. In *Turner* the State argued that the jurors who could not hear a witness could "put[] all the witnesses together" and "get[] enough evidence to fairly judge" the

_____

[9] On the videotape, the social worker's preliminary explanations and questions and S.K.'s answers to the preliminary questions lasted approximately sixteen minutes; the questions and answers relating to the spanking incident and the evening when S.K. called her mother lasted approximately twelve minutes.

476

defendant. *Turner,* 186 Wis. 2d at 285. We rejected this argument, explaining that a witness's credibility is determined by more than his or her words: "[t]onal quality, volume and speech patterns all give clues to whether a witness is telling the truth." *Id.* (citation omitted).

¶ 32. Thus, in *Turner* we rejected the proposition that it does not matter if a juror does not hear a material witness because the juror could get the same information from other witnesses. *Id.* In this case, the juror heard S.K. testify at trial and was able to observe her demeanor then; and she saw S.K.'s demeanor on the videotape, although she was not able to relate it to specific answers. Moreover, those answers were consistent with the answers S.K. gave at the trial. We will assume for purposes of discussion that significant information could be lost to a juror who was unable to hear a videotaped interview of a witness, even though the juror was able to hear the witness's consistent testimony at trial. However, Kettner does not explain why that is true in this case, and we cannot identify any instance of this from our review of the videotape and the trial transcript.

¶ 33. We also consider it significant that the juror heard "substantially all" of defense counsel's cross-examination of S.K. at trial. This cross-examination suggested several different grounds on which to question S.K.'s credibility.

¶ 34. In summary, Kettner does not make an argument that the juror's inability to hear particular testimony of S.K. on the videotape resulted in the juror not having significant information about S.K.'s account of the relevant events or about her credibility. Instead, Kettner relies on general propositions in asserting that

he is entitled to a new trial on this ground. However, general assertions of materiality or prejudice are not sufficient to establish a violation of the rights to an impartial jury and due process when we are able to see and hear the precise interview the juror saw but did not hear and are able to compare that to the transcript of that witness's trial testimony, which the juror did hear. Given the consistency of S.K.'s videotaped answers with those she gave in person at trial and in the absence of any factor identified by Kettner that indicates some specific source of prejudice, we conclude that Kettner's rights to an impartial jury and due process were not violated.

## II. *Haseltine* Testimony

¶ 35. Kettner contends that certain of the pediatric nurse's testimony violated the principle established in *Haseltine* that no witness, expert or otherwise, may give an opinion that another mentally and physically competent witness is telling the truth. *See Haseltine*, 120 Wis. 2d at 96. We begin our discussion of this issue with more detail about the challenged testimony and what occurred at trial.

¶ 36. The pediatric nurse examined S.K. three days after the spanking and took photographs then, which were shown to the jury. On direct examination, the nurse testified regarding the physical appearance of the bruising that he had observed on S.K.'s upper lateral thighs and buttocks. He found the pattern of the bruising significant in that it showed "a stretching or tears of little tiny blood capillaries" and he described this, based on the medical literature, as a "sheering injury."

¶ 37. In response to the prosecutor's question whether the nurse was able to conclude what caused the injury "based upon [his] training and experience in what [he] observed on [S.K.] and in these photographs," the nurse answered: "The injuries are consistent with . . . a spanking or a whipping either with a hand or some type of object." When next asked what he based this conclusion on, the nurse answered: "Based on, again, the medical literature that's indicated this, from what we found, along with [S.K.'s] history which she provided me with as to how the injuries occurred, but again, the appearance is very telling." The defense counsel did not object to the nurse's reference to S.K.'s account in arriving at his conclusion.

¶ 38. The nurse's direct testimony continued without another reference to S.K.'s account to him. The nurse opined that it has been "documented" that "sheering" of the blood vessels is caused by "a very forceful, rapid force." He identified the specific areas of the sheering injury on photographs and testified that he could not tell from the injuries the size of the hand or object used. And he explained that the buttocks, having soft tissue under thick skin with no "real bone underneath," are harder to bruise than parts of the body that have thinner skin over bone.

¶ 39. During cross-examination of the nurse, defense counsel raised the topic of what S.K. had told the nurse about her injuries:

Q. Okay. Is it fair to say much of what you glean or learn during your examination comes from the patient themself [sic] based on what they tell you, right?

A. What they tell me and the physical exam, yes.

Q. And for example, if they have some kind of injury, you ask where it came from and they tell you, and that's what you assume it came from, right?

479

A. Correct.

¶ 40. On redirect, defense counsel objected when the prosecutor asked this question: "And you testified that you base your I guess final determination on all sorts of factors including what the patient tells you, and in this case did you have any reason to doubt what [S.K.] told you?" The ground for the defense objection was that the nurse could not testify to S.K.'s credibility. The prosecutor explained that the "credibility of [the nurse's] examination has been called into question, so I'm asking him to maybe explain more or provide more testimony about why he relied on certain things in making his determination." The court allowed the prosecutor to do this, and the answer elicited is the evidence that Kettner asserts was erroneously admitted under *Haseltine*.

> Q. Okay. Why did you rely upon what [S.K.] told you when you made your final determination in this?
>
> A. Typically what we find with children in these situations, and this is not my, this was what I learned from going to conferences and things like that regarding abuse is that typically children will lie to protect the perpetrator .... They don't lie to make up a story, and so I find it valid what the child tells me when I'm making an assessment.

¶ 41. Kettner contends that in this answer the nurse conveyed to the jury that he believed S.K.'s description of events was truthful and that this is impermissible under *Haseltine* because the credibility of the witness is for the jury to decide. *See Haseltine*, 120 Wis. 2d at 96.

¶ 42. The State disputes Kettner's characterization of the nurse's testimony. The State asserts that the nurse was not saying that he believed S.K. was telling

480

the truth about the cause of her injuries. Instead, the State asserts, the nurse was explaining why he relied on what S.K. said, whether or not it was actually true: because in general children who say they have been abused are not making up the abuse. The State also asserts that, when the truthfulness of statements made to an expert by the person he or she examines is relevant to the examination, the expert may testify regarding his belief about the credibility of those statements.[10]

¶ 43. We will assume without deciding that the challenged testimony of the nurse is impermissible under *Haseltine*. However, we agree with the State that, if its admission was error, it is harmless error. An error is harmless when it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *State v. Gordon*, 2003 WI 69, ¶ 36, 262 Wis. 2d 380, 663 N.W.2d 765 (citation omitted). The burden of establishing harmless error is on

---

[10] The State finds support for this argument in *State v. Pharm*, 2000 WI App 167, ¶¶ 28–30, 238 Wis. 2d 97, 617 N.W.2d 163 (trial counsel not deficient for failing to object to expert's testimony that, in concluding that WIS. STAT. ch. 980 respondent had various mental disorders, expert believed the respondent's ex-wife's account of past events rather than respondent's account; this was proper expert testimony and objection would have been futile). Because we assume for purposes of argument that the nurse's testimony was improper under *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), we do not discuss whether *Pharm* supports the State's position.

We also note that the State does not assert that the nurse's challenged testimony is permissible because it assists the jury to understand S.K.'s reactive behavior by describing her behavior and the behavior of victims of child abuse. *See State v. Jensen*, 147 Wis. 2d 240, 257, 432 N.W.2d 913 (1988).

the State as the beneficiary of the error. *See State v. Anderson*, 2006 WI 77, ¶ 27, 291 Wis. 2d 673, 717 N.W.2d 74.

¶ 44. We conclude there is no reasonable doubt the jury would have found Kettner guilty even if it had not heard the nurse's explanation for why he relied on S.K.'s account in arriving at his conclusion on the cause of her injuries. We reach this conclusion for three primary reasons.

¶ 45. First, the jury had already heard from the nurse that he relied in part on S.K.'s account of how the bruises occurred in arriving at his opinion on their cause. The jury heard this once on direct, without objection from defense counsel, and again on cross-examination, when defense counsel elicited the nurse's acknowledgment that he assumed, in treating all his patients, that the injury occurred as they said it did.[11] Thus, if we accept Kettner's premise that the nurse's partial reliance on S.K.'s account in arriving at his conclusion is the same as vouching for her credibility, the jury had already heard this by the time defense counsel objected.

¶ 46. Second, although the nurse mentioned S.K.'s account when asked about the bases for his opinion on the cause of the bruises, his own explanation of his reasoning in arriving at this opinion does not include anything S.K. told him about the spanking. Rather, the nurse's reasoning as he explained it was based on the

---

[11] The State does not contend that defense counsel's failure to object to the nurse's testimony on direct examination forfeited the defendant's right to make the objection on redirect. Nor does the State present a developed argument that defense counsel's cross-examination on this point "opened the door" by suggesting that the nurse accepted S.K.'s account because he did this with all patients without regard to whether a particular patient was truthful. We therefore do not address these issues.

distinctive patterns of the bruising—the "sheering"—and his understanding from the medical literature of what causes such an injury. Indeed, he testified that nothing had been reported in the literature as a cause of this type of pattern besides a hand or object.

¶ 47. Third, even without the bolstering to S.K.'s credibility that the nurse's challenged testimony may have provided, there was compelling evidence that the bruises were the result of the spanking from Kettner. Kettner did not deny that he spanked S.K. and the existence and severity of the bruises were not disputed. The issue at trial was whether those injuries were caused by the spanking or by some other event. The only other cause suggested was S.K.'s riding on the back of or in the cart of an ATV during the two days before the day of the spanking. However there was uncontradicted expert opinion—from the nurse—that the cause of the injury was a spanking and that it "would be very unlikely" that riding on the ATV caused S.K.'s injury.

## CONCLUSION

¶ 48. We conclude the circuit court correctly concluded that Kettner's constitutional rights to an impartial jury and to due process were not violated because the hearing-impaired juror was unable to hear S.K.'s answers on the videotape. We further conclude that, assuming the challenged testimony of the pediatric nurse was impermissible *Haseltine* testimony, the error was harmless. Accordingly, we affirm the judgment of conviction and the circuit court's order denying Kettner's postconviction motion.

*By the Court.*—Judgment and order affirmed.