STATE of Wisconsin, Plaintiff-Respondent,

v.

Gary HAMPTON, Defendant-Appellant.†

Court of Appeals

*No. 95–0152–CR. Submitted on briefs February 3,
1998.—Decided March 3, 1998.*

(Also reported in 579 N.W.2d 260.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Michael S. Holzman* of *Rosen and Holzman, Ltd.,* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, by *Maureen McGlynn Flanagan,* assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

WEDEMEYER, P.J. Gary Hampton appeals from a judgment entered after a jury found him guilty of two counts of armed robbery, party to a crime, contrary to §§ 943.32(1)(b) and (2) and 939.05, STATS. This is his second appeal. In his first appeal, he claimed his right to an impartial jury and due process were violated when the trial court refused to voir dire a juror who was sleeping during the testimony of a witness. After reviewing this claim, we concluded that there was a sufficient demonstration of juror sleepiness so as to warrant further inquiry and determination of the trial court. *See State v. Hampton*, 201 Wis. 2d 662, 673, 549 N.W.2d 756, 760 (Ct. App. 1996). We remanded the matter to the trial court "with instructions that the

trial court conduct a hearing to determine: the extent or length of time of the inattentiveness, the importance of the testimony missed, and, whether such inattention prejudiced Hampton to the extent that he did not receive a fair trial." *Id.*

He now claims: (1) the trial court should have recused itself because it was a material witness to the juror's sleeping; and (2) the trial court erred in finding that any inattentiveness by the juror was insignificant and not prejudicial to Hampton. Because we conclude that the trial court was not required to recuse itself and because its findings that any inattentiveness was insignificant and did not prejudice Hampton are not clearly erroneous, we affirm.

## I. BACKGROUND

A jury convicted Hampton of two counts of armed robbery as party to a crime. On the fourth day of trial, during the afternoon session, the State presented witness Police Detective Thomas Glasnovich. During Glasnovich's testimony, defense counsel, Mitchell Barrock, passed a note to the bailiff, Deputy James Matykowski, indicating that one juror, Demian Blue, was sleeping. At the conclusion of Glasnovich's testimony, without the jury present, defense counsel moved for a mistrial based on juror Blue's inattentiveness. The trial court acknowledged receipt of defense counsel's note, and stated that although juror Blue was drowsy, he was not sleeping through the entirety of the testimony.

Hampton appealed his conviction on the basis that he was denied his right to an impartial jury and a fair trial because he was tried by a sleeping juror. We remanded the case for an evidentiary hearing for the purposes noted above.

On remand, Hampton claimed that the trial court should recuse itself because it was a material witness whose observations of the sleeping juror should be explored. The trial court denied the motion. At the evidentiary hearing, juror Blue testified that he recalled being sleepy, and that he may actually have fallen asleep for a minute or two. However, when the trial court caught his eye, he snapped to attention. Bailiff Matykowski also testified that he observed juror Blue having difficulty remaining awake during the after-lunch testimony of Detective Glasnovich. He testified that he did not observe juror Blue actually asleep, but observed that juror Blue "was sleepy" and that his eyes were closing and his head was dropping down to the chin and snapping back up to an alert position. He also testified that had he seen the juror actually fall asleep, he would have alerted the trial court immediately.

Defense counsel Barrock's testimony and Hampton's testimony differed from the witnesses referenced above. Barrock testified that juror Blue was asleep for approximately ten minutes during Glasnovich's testimony, and that he was "drowsy" for some time before actually falling asleep. Hampton testified that he observed juror Blue asleep for approximately fifteen minutes.

The trial court found Hampton's testimony less credible because he had "an obvious reason and motive to exaggerate." Based on the credible evidence, the trial court concluded that juror Blue was "drowsy or sleepy for a period of approximately ten minutes during Detective Glasnovich's testimony, and, to the extent that he actually dozed off, he did so only for a few minutes before snapping to attention again."

The trial court determined that this period of inattentiveness did not cause any prejudice to the defense

618

because of the brevity of the inattentiveness, the strength of the case against Hampton, and the fact that the inattentiveness occurred during the examination of a State witness.[1] Hampton appeals from the order entered following the evidentiary hearing.

## II. DISCUSSION

### A. Recusal.

Hampton claims that the trial court's refusal to recuse itself pursuant to § 757.19(2)(b), STATS., violated his due process rights to a fair hearing.[2] Hampton claimed that recusal was necessary because the trial court "was an observer of the juror's demeanor and would be a possible witness in this matter." The trial court refused to recuse itself, reasoning that its "observations of the situation and judgment on the legal significance of the situation is a matter of record in this case."

██

The interpretation of the recusal statute, § 757.19, STATS., is a question of law that we review independently. *See State v. Harrell*, 199 Wis. 2d 654, 659, 546

---

[1] The trial court reasoned that because the inattentiveness occurred during the examination of a State witness, any prejudice arising from missed testimony would affect the State rather than the defense.

[2] Section 757.19(2)(b), STATS., provides:

> (2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:
>
> . . . .
>
> (b) When a judge is a party or a material witness, except that a judge need not disqualify himself or herself if the judge determines that any pleading purporting to make him or her a party is false, sham or frivolous.

N.W.2d 115, 117 (1996). We conclude that the trial court was not a material witness and, therefore, the recusal statute did not compel it to remove itself from presiding over the remand hearing.

"A trial judge may express his or her opinion about counsel's motions without being subject to recusal." *State ex rel. Dressler v. Racine County Circuit Court*, 163 Wis. 2d 622, 644, 472 N.W.2d 532, 542 (Ct. App. 1991). This is what happened here. When the defense originally called the sleeping juror issue to the trial court's attention, the trial court expressed its opinion that it observed that juror Blue was drowsy, but that he was not "dozing for a period of time as long as 10 minutes." A trial court's observations are inherent to its role as presiding judge. The trial court, as a matter of course, considers the demeanor of witnesses in making its legal and factual rulings. The trial court sees and hears everything that occurs before it. The fact that the trial court, in a technical sense, "witnesses" the actions of the jurors, the testifying witnesses, the lawyers and the parties does not transform the trial court into a "material witness" pursuant to § 757.19(2)(b), STATS.

The trial court remains the judge, presiding over the proceeding and making rulings based on the evidence and argument before it. Although judicial rulings may be grounds for appeal, they do not necessarily form the basis for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). The trial court's conduct in the instant case raised no basis for recusal. The trial court merely expressed its opinion regarding the sleeping juror in ruling on the motion for a mistrial raised by the defense. Such observation was and is an

620

important part of the role of trial courts in presiding over a jury trial. *See Tanner v. United States*, 483 U.S. 107, 125–26 (1987). Thus, the trial court's observations did not transform it into a material witness, requiring recusal. The trial court's decision to decline Hampton's request to recuse itself was proper.

*B. Sleeping Juror.*

Hampton claims the trial court erred in finding that juror Blue's inattentiveness was insignificant and that no prejudice occurred as a result. He argues that the period of time juror Blue was sleeping was significant and that the juror missed substantial, important parts of Detective Glasnovich's testimony. He contends that, as a result, the trial court should have granted his motion for a mistrial because his constitutional right to a fair trial with an impartial jury was violated.

Whether to declare a mistrial is directed to the trial court's discretion. *See State v. Copening*, 100 Wis. 2d 700, 709–10, 303 N.W.2d 821, 826–27 (1981). The denial of a motion for a mistrial will be reversed only if the trial court erroneously exercised its discretion. *See State v. Grady*, 93 Wis. 2d 1, 13, 286 N.W.2d 607, 612 (Ct. App. 1979). The trial court must determine, in light of the whole proceeding, whether the claimed error is sufficiently prejudicial as to warrant a mistrial. Our standard of review relative to the constitutional claim is mixed. We will not overturn a trial court's findings of evidentiary and historical facts unless they are clearly erroneous. *See State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827, 832 (1987). However, the ultimate question of whether Hampton's constitutional right to a fair trial was violated is a question of law that we determine independently. *See State v. Turner*, 186

Wis. 2d 277, 284, 521 N.W.2d 148, 151 (Ct. App. 1994). We affirm the trial court's ruling.

At the remand hearing, the trial court heard testimony from Hampton, Hampton's trial counsel, juror Blue and the bailiff who was present on the fourth day of trial. As noted, Hampton testified that the juror was asleep for fifteen minutes and his trial counsel testified that the juror was asleep for ten minutes, although the juror was "drowsy" for some time before actually falling asleep. The juror testified that he did not recall how long he had been drowsy, that he "probably actually fell asleep" for a period of about two minutes, and that he recalled that the trial court got his attention as he "was kind of dozing off" after which he woke up. The bailiff, Deputy Matykowski, testified that he did not see juror Blue actually sleeping, but that the juror was sleepy and that the juror's eyes were closing, after which the juror's head would drop down to his chin and then snap back up. Matykowski testified that if he felt a juror had actually fallen asleep, he would alert the trial court immediately. He also said that he recalled the trial court focusing on juror Blue, getting his attention, and that after that, the juror remained more alert for the balance of Detective Glasnovich's testimony.

Based on this testimony, the trial court found that juror Blue's inattentiveness was insignificant in that he was drowsy for approximately ten minutes and actually fell asleep for only one or two minutes. The trial court also found that, based on the brevity of the inattentiveness as well as the strength of the evidence against Hampton, the juror's inattentiveness did not prejudice the defense. There is support in the record for these findings and, therefore, the findings are not clearly erroneous. *See Mowers v. City of St. Francis,*

108 Wis. 2d 630, 633, 323 N.W.2d 157, 158 (Ct. App. 1982).

Although Hampton's claim that there is evidence in the record that the juror actually slept for a period of ten-to-fifteen minutes is not inaccurate, this does not render the trial court's findings clearly erroneous. The evidence that Hampton points to is his own testimony as well as the testimony of his trial counsel. The trial court, however, found the testimony of its bailiff and the juror to be more credible. This determination is sound as both Hampton and his counsel had an interest in the outcome. The bailiff and the juror did not. We are not empowered to substitute our own credibility determinations for those made by the trial court. *See Dejmal v. Merta*, 95 Wis. 2d 141, 152, 289 N.W.2d 813, 818 (1980).

There is also evidence to support the trial court's finding that the juror's inattentiveness during Detective Glasnovich's testimony was not prejudicial to the defense. The evidence against Hampton was very strong and Glasnovich's testimony was fairly corroborative and cumulative to the testimony of the victims, Dana and Roya Johnson, as well as other police witnesses. Glasnovich's role in this case was to conduct the post-incident interview with Dana Johnson and to conduct the on-scene identification procedure with her. Dana testified that she knew Hampton prior to the robbery, and she positively identified him as the perpetrator. Glasnovich also testified about the recovery of some of the stolen property in Hampton's home, where Hampton was arrested shortly after the robbery. It was undisputed that the stolen property was discovered in Hampton's home. Hampton's defense theory, however, was that he had purchased the stolen property from the other two robbers.

Because the nature of Detective Glasnovich's testimony was not pivotal to the State's case, juror Blue's brief inattentiveness during this testimony was not prejudicial to the defense.[3] Accordingly, we conclude that the trial court did not erroneously exercise its discretion in denying the motion for a mistrial and that Hampton's due process rights to a fair trial were not violated.

*By the Court.*—Judgment and order affirmed.

---

[3] Hampton argues that inattentiveness during the cross-examination of Glasnovich prejudiced his defense because defense counsel established that the State's star witness, Dana Johnson, had provided an incorrect physical description of Hampton and misidentified certain items of clothing worn by the perpetrators. This claim is not supported by the record. Based on the trial court's findings, we conclude that the juror inattentiveness occurred for a period of ten minutes during the direct examination of the detective. The witnesses at the remand hearing testified that defense counsel passed a note to the bailiff to alert the court to the drowsy juror, after which the trial court quickly responded by focusing in on juror Blue who, in turn, became alert again. The only reasonable inference is that this occurred during the State's examination of the witness. The State raises this point in its response brief. Hampton failed to controvert it as no reply brief was filed.