******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BEAR, J., concurring and dissenting. I agree with the majority that the judgment of the trial court should be reversed. I write separately, however, because I disagree with much of the majority opinion. I disagree primarily on the ground that our Supreme Court's mandate, set forth in its decision and its remand instructions in *State* v. *Connor*, 292 Conn. 483, 973 A.2d 627 (2009), was directed solely to Judge Espinosa,[1] who was the judge who had conducted the defendant's jury trial, and, with the required permission of the Chief Justice, still may be able to act in accordance with the remand instructions. Although Judge Espinosa began the hearings that were necessary to follow our Supreme Court's remand instructions, she then was elevated to the Appellate Court,[2] and the Superior Court assigned Judge Schuman to continue the hearings to carry out the remand instructions. Despite Judge Schuman's efforts, because he had not conducted the defendant's criminal trial and had not reviewed the defendant's relevant medical records, he was unable to make the findings that were required by the Supreme Court's remand instructions.

The defendant, Jeffrey T. Connor, has appealed from the trial court's judgment after remand denying him a new trial. Judge Schuman set forth the following in his decision: "On May 1, 2006, a jury convicted the defendant of kidnapping in the first degree, robbery in the third degree, robbery involving an occupied motor vehicle, and larceny in the third degree. Following the jury trial, the trial court, *Espinosa, J.*, conducted a hearing and concluded that the defendant had violated the conditions of probation previously imposed on him in connection with a prior, unrelated conviction. The defendant represented himself at both proceedings. The court revoked the defendant's probation and sentenced the defendant to three years of imprisonment as a result of the violation. The court then sentenced the defendant on the jury case to thirteen years consecutive to the three years for violation of probation, for a net effective sentence of sixteen years.

"According to the Supreme Court, the jury could reasonably have found the following facts supporting the convictions on the substantive criminal charges. 'On February 24, 1997, [defendant's former wife Marsha] Viklinetz was operating her vehicle near her place of employment in East Hartford. While stopped at a stop sign, she observed the defendant on the sidewalk to her right. Viklinetz was surprised to see the defendant because he did not live or work in the area, and she previously had obtained a restraining order against him. When she saw the defendant approaching her car, Viklinetz locked the doors and rolled up the windows. The

defendant, however, punched his fist through the driver's side window and forced his way into the vehicle, pushing Viklinetz into the passenger seat and gaining control of the vehicle. The defendant proceeded onto a highway, where he reached speeds of up to ninety miles per hour. At times, the defendant was irrational, threatening to kill Viklinetz and himself by driving the car off the road. At other times, he was calm and told Viklinetz that he loved her and that they should reconcile. The defendant continued to drive for approximately thirty minutes, at which time the vehicle began to run low on fuel. The defendant stopped at a gas station in Berlin. At that point, Viklinetz got out of the vehicle and attempted to take the keys from the defendant. After a brief struggle, the defendant jumped into the vehicle alone and drove away. Viklinetz ran into the gas station and contacted the police. Her car eventually was recovered in New Britain.' [Id., 488–89].

"The defendant appealed. On July 14, 2009, the Supreme Court rendered its decision. The court found that the trial court did not violate the defendant's constitutional right to the assistance of counsel at the criminal trial because, in accordance with the law at the time, the defendant was found competent to stand trial and therefore he was competent to represent himself. Id., 505–25 (citing *Godinez* v. *Moran*, 509 U.S. 389 [113 S. Ct. 2680, 125 L. Ed. 2d 321] [1993], and *State* v. *Day*, 233 Conn. 813, 661 A.2d 539 [1995], overruled in part by *State* v. *Connor*, 292 Conn. 483, 528 n.29, 973 A.2d 627 [2009]). The court observed, however, that in *Indiana* v. *Edwards*, 554 U.S. 164 [128 S. Ct. 2379, 171 L. Ed. 2d 345] (2008), a case decided after oral argument in the defendant's appeal, the United States Supreme Court held that the sixth and fourteenth amendments, which generally guarantee a criminal defendant the right to self-representation, permit a state court to deny that right to a defendant who, though minimally competent to stand trial with the assistance of counsel, lacks the mental capacity to represent himself at trial. Our Supreme Court accordingly exercised its supervisory powers and remanded the case to this court to determine whether the defendant was competent at the time of trial to conduct the trial proceedings by himself. *State* v. *Connor*, supra, 292 Conn. 525–30."

After analyzing our Supreme Court's decision setting forth the terms of its remand instructions, I conclude that it contemplated that only Judge Espinosa could conduct the proceedings on remand, because, inter alia, it referred to the likelihood that she would have to apply her recollection of the criminal pretrial and trial proceedings in determining the defendant's competency to represent himself at his criminal trial. In a footnote, our Supreme Court stated: "Of course, the issue that the trial court must address on remand concerns the defendant's competency to represent himself at the time that the trial took place. Thus, the trial court

may elect to order an evaluation of the defendant if it determines that such an evaluation may be useful in ascertaining the defendant's ability to proceed without counsel at that time. Furthermore, if the defendant were to persist in refusing to cooperate with any such evaluation, the trial court would have no choice but to make a determination concerning the defendant's competency to represent himself at the trial that is limited generally to its recollection of the proceedings and its review of the trial transcript and arguments of counsel." Id., 529 n.31. No new evaluation was ordered by either Judge Espinosa or Judge Schuman, and neither of them directly reviewed the defendant's existing medical records.

The Supreme Court analyzed the impact of *Edwards* on the defendant's right to represent himself at trial, and it set forth and explained Judge Espinosa's duties on remand, as follows: "We now turn to the issue of whether the defendant is entitled to a new trial because he lacked the ability, due to mental illness or incapacity, to perform the basic functions necessary for the trial of his case. We conclude that the case must be remanded to the trial court, *Espinosa, J.*, for a resolution of this issue.

"As we previously have explained, the United States Supreme Court recognized in *Edwards* that a defendant may be competent to stand trial if represented by counsel yet lack the ability to play the significantly expanded role required for self-representation . . . . *Indiana* v. *Edwards*, supra, 554 U.S. 176. The court therefore concluded that the [c]onstitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the [c]onstitution permits [s]tates to insist [on] representation by counsel for those competent enough to stand trial under *Dusky* [v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960)] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. [*Indiana* v. *Edwards*, supra], 177–78." (Internal quotation marks omitted). *State* v. *Connor*, supra, 292 Conn. 525.

The court continued: "We agree with *Edwards* that, in light of 'the different capacities needed to proceed to trial without counsel, there is little reason to believe that [the] *Dusky* [competency standard] alone is sufficient' for determining whether a mentally ill or incapacitated defendant who, although competent to stand trial with the aid and assistance of counsel, also is competent to represent himself at that trial. Id., 177. As the court explained, '[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's

ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.' . . . Id., 176; see also *Massey* v. *Moore*, 348 U.S. 105, 108, 75 S. Ct. 145, 99 L. Ed. 135 (1954) ('[o]ne might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel'); *Pickens* v. *State*, 96 Wis. 2d 549, 567, 292 N.W.2d 601 (1980) ('The standard for determining competency to stand trial is whether one is able to understand the proceedings against him and to assist in his own defense. . . . This test assumes [that] the defendant will have representation and that he will be required only to assist in his defense. Certainly more is required [when] the defendant is to actually conduct his own defense and not merely assist in it.' . . .), overruled in part on other grounds by *State* v. *Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997). Simply put, '[i]t is one thing for a defendant to have sufficient mentation to be able to follow the trial proceedings with the aid of a lawyer, and another to be able to represent himself . . . .' *Brooks* v. *McCaughtry*, 380 F.3d 1009, 1011 (7th Cir. 2004), cert. denied sub nom. *Brooks* v. *Kingston*, 543 U.S. 1054, 125 S. Ct. 912, 160 L. Ed. 2d 778 (2005). Moreover, when a mentally ill or incapacitated defendant is permitted to represent himself at trial despite his or her lack of competence to do so, the reliability of the adversarial process, and thus the fairness of the trial itself, inevitably is cast in doubt. Although we acknowledge that the right of self-representation exists primarily 'to affirm the dignity and autonomy of the accused'; . . . *State* v. *Brown*, 256 Conn. 291, 302, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001); we believe that that interest is outweighed by the interest of the state, the defendant and the public in a fair trial when, due to mental illness, the defendant is incompetent to conduct trial proceedings without the assistance of counsel. We therefore conclude that, when a trial court is presented with a mentally ill or mentally incapacitated defendant who, having been found competent to stand trial, elects to represent himself, the trial court also must ascertain whether the defendant is, in fact, competent to conduct the trial proceedings without the assistance of counsel. . . .

"Because *Edwards* had not been decided prior to the conclusion of the trial in the present case, Judge Espinosa had no alternative, in light of our holding in *State* v. *Day*, supra, 233 Conn. 825, but to permit the defendant to represent himself once it was determined that he was competent to stand trial. . . . We therefore do not know whether Judge Espinosa would have granted the defendant's request to represent himself if she had had the authority to deny the request in accordance with *Edwards* and our holding in the present case. Consequently, the case must be remanded for a determination by the court, *Espinosa, J.*, as to

whether the defendant then was competent, notwithstanding any mental disability, to conduct the trial proceedings by himself. . . . In making this determination, the trial court, which, as the court emphasized in *Edwards*, is 'best able to make [such a] fine-tuned mental capacity [decision], tailored to the individualized circumstances of a particular defendant'; *Indiana* v. *Edwards*, supra, 554 U.S. 177; should consider any and all relevant information, including, but not limited to, the extent to which the defendant's competence to represent himself may have been affected by mental illness, by the stroke that he had suffered, and by any memory problems that he may have experienced as a result of that stroke. The court also should evaluate the extent to which the defendant may have been feigning mental problems. Because of the defendant's refusal to cooperate with the various evaluation teams that had been assembled to assess his competency, it is difficult to discern whether the defendant suffered from a mental illness that, alone or in combination with his stroke, may have rendered him incompetent to represent himself. Accordingly, the trial court may seek to have the defendant examined again if it appears that such an examination would be helpful in resolving the issue presented on remand. . . .

"We emphasize that the issue to be decided on remand is not whether the defendant lacked the technical legal skill or knowledge to conduct the trial proceedings effectively without counsel. Indeed, it appears quite clear that he did lack such skill or knowledge. That fact, however, has no bearing on whether he was competent to represent himself for purposes of *Edwards*. Rather, the determination of his competence or lack thereof must be predicated solely on his ability to 'carry out the basic tasks needed to present his own defense without the help of counsel'; id., 175–76; notwithstanding any mental incapacity or impairment serious enough to call that ability into question. Of course, in making this determination, the trial court should consider the manner in which the defendant conducted the trial proceedings and whether he grasped the issues pertinent to those proceedings, along with his ability to communicate coherently with the court and the jury." (Footnotes omitted.) *State* v. *Connor*, supra, 292 Conn. 525–30.

Our Supreme Court's specific mandate was that "[t]he criminal case is remanded to the trial court with direction to determine whether it would have denied the defendant's request to represent himself at trial, due to the defendant's mental illness or mental incapacity, even though the defendant was deemed to have been competent to stand trial and to waive the right to counsel. If the court would have denied the defendant's request to represent himself at trial, the trial court shall grant the defendant a new trial in the criminal case; if not, the judgment in the criminal case is affirmed." Id., 533.

After Judge Espinosa was elevated to this court, she took no further action on this case.[3] Despite the efforts and actions of Judge Schuman thereafter, he ultimately was not able to perform the specific requirements of the remand instructions set forth by our Supreme Court because he did not conduct the criminal trial. Our Supreme Court recently reiterated that strict compliance with its remand instructions is required: "Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. . . . It is the duty of the trial court on remand to comply strictly with the mandate of [this] court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that [this] court might have directed. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein." (Internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 341, 15 A.3d 601 (2011).

In accordance with our Supreme Court's explication of the law as set forth in *Lighthouse Landings, Inc.*, taking into consideration the constitutionally mandated change in the law of self-representation in criminal trials set forth in *Edwards*, and analyzing the remand instructions in light of the history of this case after the remand, I conclude that the appropriate remedy at this point is to allow Justice Espinosa who, although she is an Associate Justice of the Supreme Court, is also a Judge of the Superior Court, the opportunity to comply with the remand instructions if she receives the required permission to do so. See General Statutes § 51-205 ("[t]he judges of the Supreme Court shall be released from sitting on the Superior Court, except that the Chief Justice may assign any such judge to sit on the Superior Court whenever in [her] judgment the public business may require"). If this does not occur within a reasonable time, or if permission is denied, then the defendant should receive a new trial. I therefore dissent from the result reached by the majority insofar as it does not allow for the opportunity to comply with the existing mandate of our Supreme Court.

I also disagree with the majority's conclusion as a matter of law that Judge Espinosa after eight years cannot remember sufficiently the details of the defendant's performance as a self-represented litigant, especially in light of the availability of her affidavit; see footnote 7 of the majority opinion; the transcripts of the trial, and other contents of the case file that could

refresh her recollection if that were necessary. See *Gold* v. *Warden*, 222 Conn. 312, 320, 610 A.2d 1153 (1992) (trial judge could testify at new habeas hearing after remand taking place more than five and one-half years after criminal trial because of unique opportunity to observe petitioner's demeanor throughout entire trial). On the one hand, however, the majority uses the passage of eight years, and its conclusion as a matter of law of a failure of judicial memory because of the passage of those eight years, to determine that a new trial should be granted. On the other hand, at the new trial, assuming that it takes place despite the defendant's possible current (and future) lack of competence to understand the charges and proceedings or assist counsel in his defense, witnesses, primarily the defendant's former spouse, will be required to testify about events taking place almost two decades ago. The logical but unstated extension of the majority's failed memory as a matter of law analysis is that there should be no new trial but instead there should be a reversal of the conviction because no person, including that of the defendant's former spouse, can have sufficient memory after approximately twenty years to be competent as a witness. This, however, has not been our position or the position of our Supreme Court to date as a matter of law or otherwise. I also am concerned by the seeming determination by the majority that the mandate of our Supreme Court can be vitiated and invalidated by this court because of the mere passage of time (or for any other reason).

I also disagree with the majority's conclusion that a new trial is the only option available to us in this appeal because Judge Espinosa's affidavit somehow now disqualifies her from fulfilling our Supreme Court's remand instructions despite the specific requirement of those remand instructions that Judge Espinosa, as necessary, apply her recollection of the trial proceedings to reach the determination required by *Edwards*. It is *because* she conducted and, thus, observed the trial proceedings and the defendant's participation therein that the Supreme Court remanded the case *specifically* to her for a nunc pro tunc determination of the defendant's competency to represent himself during the criminal trial.[4] Compare the mandate in *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 361–64, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). Additionally, I do not agree that Judge Espinosa providing an affidavit in the remand proceedings made her a *material witness*, such that she would be barred from subsequently carrying out the specific remand instructions of our Supreme Court by the provisions of rule 2.11 (a) (2) (D) of the Code of Judicial Conduct. Judge Espinosa was not a witness to any of the actions of the defendant deemed to be criminal; she conducted the criminal trial and thus observed the defendant as part of her trial

duties. Her affidavit reasonably can be viewed as her attempt to comply with the remand instructions after she had been elevated to a higher court, when, because of the Superior Court assignment of the case to Judge Schuman, she was unable to put her findings and conclusions into a memorandum of decision as usually would have occurred. I have not found any precedent supporting the majority's position that the preparation and submission to the court of an affidavit in the circumstances of this case changed Judge Espinosa's status from that of the uniquely qualified judge who had participated in and rendered a decision in the relevant proceedings to that of a material witness, or a witness offering testimony as that term usually is construed, thus somehow disqualifying her from acting as a judge in this case.[5] Our Supreme Court specifically remanded the matter to Judge Espinosa because she was the judge who had the personal knowledge of what had occurred during the relevant time frame so that she, essentially, could articulate her findings and conclusions under the new standard announced in *Edwards*. I am persuaded that her submission of an affidavit in the remand proceedings no more made her a material witness than did her acting as the judge during the defendant's pretrial and trial proceedings.[6]

Furthermore, I disagree with the majority's discussion and application to this appeal, despite the clear remand instructions of our Supreme Court, of the nunc pro tunc law it set forth in its opinion to vitiate and invalidate those remand instructions. With respect to the nunc pro tunc law invoked by the majority, our Supreme Court did not find in *Connor* that there was any bar grounded in the nunc pro tunc doctrine to its mandate to Judge Espinosa on remand, and that issue was not raised in this appeal. It, therefore, is not properly before us. It is both irrelevant to and moot as an issue in this appeal, and it is unnecessary for this court to address it.

[1] Judge Espinosa was sworn in as a judge of the Appellate Court on March 16, 2011, and she became an Associate Justice of the Supreme Court on March 6, 2013. Although she is currently an Associate Justice, for clarity she is referred to herein as Judge Espinosa.

[2] Judge Espinosa conducted two days of hearings, but the proceedings were not completed before she was elevated to the Appellate Court. She made no findings of fact or any conclusions of law.

[3] The following determination required on remand by our Supreme Court was not made by Judge Espinosa prior to her appointment to this court: "We therefore do not know whether Judge Espinosa would have granted the defendant's request to represent himself if she had had the authority to deny the request in accordance with *Edwards* and our holding in the present case. Consequently, the case must be remanded for a determination by the court, *Espinosa, J.*, as to whether the defendant then was competent, notwithstanding any mental disability, to conduct the trial proceedings by himself." *State* v. *Connor*, supra, 292 Conn. 528. These sentences of the Supreme Court's opinion, inter alia, support my conclusion that the Supreme Court clearly contemplated that only Judge Espinosa could conduct the proceedings on remand.

[4] As set forth previously in this concurring and dissenting opinion, the Supreme Court made this clear in its opinion, including by the following language: "Consequently, the case must be remanded for a determination by the court, *Espinosa, J.*, as to whether the defendant then was competent,

notwithstanding any mental disability, to conduct the trial proceedings by himself. . . . In making this determination, the trial court, which, as the court emphasized in *Edwards*, is 'best able to make [such a] fine-tuned mental capacity [decision], tailored to the individualized circumstances of a particular defendant'; (footnote omitted) *Indiana* v. *Edwards*, supra, 544 U.S. 177; should consider any and all relevant information, including, but not limited to, the extent to which the defendant's competence to represent himself may have been affected by mental illness, by the stroke that he had suffered, and by any memory problems that he may have experienced as a result of that stroke. The court also should evaluate the extent to which the defendant may have been feigning mental problems." *State* v. *Connor*, supra, 292 Conn. 528–29.

[5] I also question the majority's failure to discuss whether the remand instructions could be carried out only by Judge Espinosa or whether another trial judge could perform those instructions.

[6] The cases cited by the majority in support of its material witness allegation are distinguishable on their facts: In *Tyler* v. *Swenson*, 427 F.2d 412, 413–14 (8th Cir. 1970), the facts involved off-the-record statements by the trial judge: "The facts may be briefly set out. On March 15, 1965, petitioner, contrary to advice of his counsel, pleaded guilty in state court to four separate charges—two of assault with intent to kill, and one each of first degree robbery and carrying a concealed weapon. He was sentenced to [twenty] years in the Missouri penitentiary. Thereafter, pursuant to Missouri Supreme Court Rule 27.26, V.A.M.R., petitioner filed an application for post-conviction relief alleging that his guilty plea was involuntarily made. As authorized by Rule 27.26, an evidentiary hearing was held before the trial judge who had accepted petitioner's guilty plea.

"At the evidentiary hearing petitioner testified that prior to his guilty plea the trial judge, in chambers, discussed with petitioner the alternatives of going to trial and pleading guilty. According to petitioner, the judge made a threat that petitioner would receive a [fifty] year sentence if found guilty by a jury as compared with a [twenty] year sentence if he would enter a guilty plea. Petitioner's mother and his attorney, who had represented him when he [pleaded] guilty, both testified at the evidentiary hearing and corroborated petitioner's testimony regarding the threat made by the trial judge. The prosecuting attorney, as a witness for the state, verified that the conference between petitioner and the trial judge had occurred and that the judge had told petitioner of the [twenty] year sentence in the event he would plead guilty. However, he could not remember whether or not the judge had said anything about a [fifty] year sentence.

"Throughout the hearing the trial judge, by his questioning of the witnesses and by his statements from the bench, interjected his own recollection of the events surrounding petitioner's guilty plea. At one point in the hearing the judge and petitioner's trial counsel, Clement Kieffer, became engaged in a dispute as to whether petitioner had employed another attorney, one who had failed to appear, to defend him on three of the charges. So heated was the controversy as to their respective recollections of the facts, that Kieffer was ultimately held in contempt of court. At another point in the hearing, after testimony by petitioner's mother, as to what occurred in her presence in the judge's chambers, the trial judge made a statement that petitioner's mother in fact had never even been in the court's chambers. In his findings, the trial judge found that the events had not taken place as petitioner and the other witnesses had testified." (Footnote omitted.)

Additionally, the court noted that the trial judge was going to rely on his own recollection as evidence in connection with the postconviction evidentiary hearing: "It is true that petitioner did not call the judge as a witness or file an affidavit of prejudice against him as provided for under state rules. However, neither of these factors justifies a denial of a fair hearing under 28 U.S.C.A. § 2254 (d). State procedural rules are subservient to basic requirements of due process allowing a petitioner the right to be confronted with adverse evidence, and to cross-examine the witnesses presenting such evidence. In the instant case, petitioner had no opportunity to cross-examine the trial judge since the judge did not take the stand; furthermore, petitioner had no cause to attempt to disqualify the trial judge until it became apparent after the hearing was concluded that the trial judge was going to rely upon his own recollection as an evidentiary basis for denying petitioner's claim." Id., 415.

*Lepper* v. *United States*, 233 F. 227, 230 (4th Cir. 1916) (Woods, J., concurring), cited in *Tyler* and approximately six other reported opinions in the almost 100 years of its existence, also involves an evidentiary matter where the judge during the trial asked questions of a witness based on letters acknowledging guilt written to the judge by or on behalf of the defendant.

*State* v. *Gardner*, 661 N.W.2d 116, 117 (Iowa 2003), involved a judge clearly

acting as a witness relative to an evidentiary matter after a trial over which he had presided: "In August 2001 a jury found the defendant guilty of second-degree robbery in a trial over which Judge George Stigler presided. After the verdict, the State filed amended minutes of testimony in support of a habitual violator allegation made in the trial information. See Iowa Code §§ 902.8, .9 (2001) (providing for sentencing enhancement when defendant is a habitual violator). These minutes included Judge Stigler as a witness, stating the judge would testify he presided over a 1989 case in which the defendant pled guilty to second-degree robbery."

None of these factual scenarios are similar to the matter before us. On the other hand, in *State* v. *McCarthy*, 191 Vt. 498, 509, 48 A.3d 616 (2012), the Vermont Supreme Court rejected a claim that the trial judge in the performance of his judicial duties was a material witness: "Finally, defendant argues that the trial judge impermissibly assumed the roles of an advocate and a witness by recording observations on the record, out of the presence of the jury, about the conduct of the [jury's visit to the site of the shooting at issue in the trial]. See V.R.E. 605 ('A judge sitting at the trial may not testify in that trial as a witness.'); A.O. 10, Canon 3B (5) (requiring judges to discharge their adjudicative duties 'without bias or prejudice')."

"The judge's on-the-record, away-from-the-jury description of the jury view in this case did not constitute 'testimony' or advocacy, but was akin to the kinds of observations judges make in the course of their duties presiding over trials. See, e.g., *State* v. *Forty*, 2009 VT 118, ¶ 27, 187 Vt. 79, 989 A.2d 509 (describing how trial judge observed that witness had been in courtroom during other testimony in violation of sequestration order and therefore did not allow witness to testify); *Wheeler* v. *Cent. Vt. Med. Ctr.*, 155 Vt. 85, 95, 582 A.2d 165, 171 (1989) ('[T]he judge's observations [of a juror] can be as critical to a disqualification decision as the words of the juror herself.'). A trial court's observations about the conduct of a trial are inherent to its role as presiding judge, and trial courts, as a matter of course, draw on their own observations in making legal and factual rulings. *State* v. *Hampton*, [217 Wis. 2d 614, 620] 579 N.W.2d 260, 262–63 ([App.] (1998) (holding that judge who presided over trial and observed dozing juror was not by virtue of his observations a 'material witness' disqualified from presiding over subsequent proceeding regarding extent of juror's inattention)."

In *Hampton*, the trial judge opined that a juror was drowsy, but that he was not dozing for a period of time as long as ten minutes. Id., 618. The Wisconsin Court of Appeals determined that the judge was not a material witness: "We conclude that the trial court was not a material witness and, therefore, the recusal statute did not compel it to remove itself from presiding over the remand hearing.

" 'A trial judge may express his or her opinion about counsel's motions without being subject to recusal.' *State ex rel. Dressler* v. *Racine County Circuit Court*, 163 Wis. 2d 622, 644, 472 N.W.2d 532, 542 (Ct. App. 1991). This is what happened here. When the defense originally called the sleeping juror issue to the trial court's attention, the trial court expressed its opinion that it observed that juror Blue was drowsy, but that he was not 'dozing for a period of time as long as [ten] minutes.' A trial court's observations are inherent to its role as presiding judge. The trial court, as a matter of course, considers the demeanor of witnesses in making its legal and factual rulings. The trial court sees and hears everything that occurs before it. The fact that the trial court, in a technical sense, 'witnesses' the actions of the jurors, the testifying witnesses, the lawyers and the parties does not transform the trial court into a 'material witness' pursuant to § 757.19 (2) (b), STATS.

"The trial court remains the judge, presiding over the proceeding and making rulings based on the evidence and argument before it. Although judicial rulings may be grounds for appeal, they do not necessarily form the basis for recusal. See *Liteky* v. *United States*, 510 U.S. 540, 555 [114 S. Ct. 1147, 127 L. Ed. 2d 474] (1994). The trial court's conduct in the instant case raised no basis for recusal. The trial court merely expressed its opinion regarding the sleeping juror in ruling on the motion for a mistrial raised by the defense. Such observation was and is an important part of the role of trial courts in presiding over a jury trial. See *Tanner* v. *United States*, 483 U.S. 107, 125–26 [107 S. Ct. 2739, 97 L. Ed. 2d 90] (1987). Thus, the trial court's observations did not transform it into a material witness, requiring recusal. The trial court's decision to decline Hampton's request to recuse itself was proper." *State* v. *Hampton*, supra, 217 Wis. 2d 620–21.