COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1482-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2015CF985**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT C. STRYKER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: RALPH M. RAMIREZ and JENNIFER R. DOROW, Judges. *Affirmed*.

Before Gundrum, P.J., Neubauer and Reilly, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Robert C. Stryker, pro se, appeals a judgment of conviction for first-degree sexual assault of a child and an order denying his motion for postconviction relief.[1]  Stryker argues the circuit court erroneously denied his motion to admit at trial prior untruthful allegations of sexual assault by the victim and her mother.  He also argues the court erroneously denied his motion for a mistrial after "Guardians of the Children" motorcycle club members accompanied the victim through public areas of the courthouse during the trial. We reject his arguments and affirm.

## BACKGROUND

¶2    Stryker was charged in August 2015 with one count of first-degree sexual assault of a child.  In July 2015, Jennifer reported to her adoptive mother, Melanie, that approximately one year earlier—when Jennifer was six years old—Stryker had put his hand in her pants and touched her private area.[2]  Jennifer told Melanie that the assault occurred while she was at Stryker's residence watching a movie with his children.  Melanie took Jennifer to the Waukesha Police Department, where Jennifer was interviewed by police.  A forensic interview with a social worker was conducted the following day.  Jennifer repeated her allegations during the interview and at trial.

---

[1] By order dated October 21, 2020, this court granted a motion to withdraw filed by Stryker's appointed appellate counsel.  The Honorable Ralph M. Ramirez presided over the trial proceedings.  The Honorable Jennifer R. Dorow presided over proceedings related to Stryker's postconviction motion.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we refer to the victim and her family using pseudonyms.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3      Stryker filed two pretrial evidentiary motions at issue here. The first sought to admit three instances of other-acts evidence on the theory that Melanie was, in the words of a child protective services (CPS) case worker, "hyper vigilant regarding sexual abuse." The first incident, known as the "bus driver incident," involved an unsubstantiated report by Melanie to CPS in January of 2013 that Jennifer had been sexually assaulted by a bus driver on the way home from school.[3] The second incident, known as the "neighborhood boy incident," occurred four months prior to Jennifer's accusation against Stryker, when Melanie reported that a male juvenile had sexually assaulted a neighborhood child. The third incident, also from 2013, involved a police report by Melanie that a man from Africa was engaging in the internet solicitation of one of her other children. Police did not pursue charges relating to any of those reported incidents.

¶4      Additionally, Stryker filed a motion seeking to admit at trial prior untruthful allegations of sexual assault by Jennifer. In addition to again seeking the admission of evidence regarding the bus driver incident, Stryker sought to admit evidence that, during that investigation, Jennifer had told a social worker that her brother had touched her private parts. Melanie declined to have police investigate that allegation and offered a nonsexual explanation for Jennifer's statement. The circuit court concluded none of the proffered evidence was admissible and denied both motions.

¶5      At the beginning of Stryker's trial, his attorney raised an issue regarding members of the "Guardians of the Children" motorcycle club sitting in the public gallery behind the prosecutor's table. The group members wore

---

[3] Additional details regarding this incident will be provided below.

sleeveless leather vests displaying a large circular emblem with the group name and logo, which includes a winged shield with an unbalanced scale. The circuit court stated any patches or emblems were not visible from the bench, and it declined to exclude members of the public or require anyone to change clothing at that time.

¶6      Upon returning from the first day's lunch recess, Stryker's attorney requested a mistrial. He represented to the circuit court that he had witnessed Guardians of the Children members escorting Jennifer through the cafeteria to the front of the food line, in front of some jurors. He further represented that his research into the group revealed that they advocate for children and "serve in an intimidation role."

¶7      The prosecutor, too, stated that he had witnessed some of the interaction between Jennifer and the advocacy group and was "a little troubled" by what he saw. However, he responded that a mistrial was not warranted because he had advised Melanie that Jennifer should not be interacting with the group in the presence of the jury and escorted Jennifer out of the cafeteria and back to the prosecutor's office. The court denied the mistrial motion but stated it would remain "keenly aware and watchful of any problems or concerns."

¶8      The jury found Stryker guilty of first-degree sexual assault of a child by sexual contact. After sentencing and the appointment of postconviction counsel, Stryker filed a postconviction motion seeking a new trial. As relevant here, the motion argued the circuit court had erroneously exercised its discretion when denying Stryker's motion to admit evidence of the bus driver incident and when denying his mistrial motion. The court denied the motion. Stryker now appeals.

**DISCUSSION**

*I. Admissibility of Prior Allegations of Sexual Misconduct*

¶9 As an initial matter, the parties dispute what instances of alleged prior misconduct may be considered on appeal. Stryker argues evidence regarding the bus driver and neighborhood boy incidents were admissible as other-acts evidence "to provide context and motive for [Jennifer]'s accusation" against Stryker and to "show [Melanie]'s plan and intent in making the report." He also argues Jennifer's allegation against her brother during the investigation of the bus driver incident should have been allowed at trial as evidence of a prior untruthful allegation of sexual assault under WIS. STAT. § 972.11(2)(b)3. Finally, he asserts evidence of all three prior allegations should have been allowed at trial based on his constitutional right to present a defense.

¶10 The State responds that Stryker has forfeited his arguments regarding all prior allegations except the bus driver incident by failing to raise them in his postconviction motion. The paragraph of the case the State relies on, ***Townsend v. Massey***, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155, does not establish that a defendant must re-raise previously filed evidentiary motions in a postconviction motion to obtain appellate review. Rather, the forfeiture inquiry is "whether a legal argument or theory was raised before the circuit court, as opposed to being raised for the first time on appeal in a way that would 'blindside' the circuit court." ***Id.*** (citation omitted).

¶11 Stryker adequately raised his arguments in the circuit court. We agree with the State, however, that his postconviction counsel conceded that evidence concerning the neighborhood boy incident was properly deemed inadmissible. In the course of advancing arguments regarding the bus driver

incident, counsel stated: "[I]t's an interesting sort of … dilemma that a victim's mother who had made multiple prior false accusations, which I think and I agree that the Court was correct in denying those but they informed … his decision regarding this bus driver allegation …." As a result, even if the court's evidentiary ruling regarding the neighborhood boy incident was erroneous—a matter on which we reach no conclusion—we decline to review the invited error. *See State v. Freymiller*, 2007 WI App 6, ¶15, 298 Wis. 2d 333, 727 N.W.2d 334.[4]

¶12    We turn, then, to the bus driver incident.  According to Stryker's motion, on January 23, 2013, Melanie reported to police that Jennifer, then four years old, arrived home approximately twenty minutes late from school and said the "bus teacher" had her play "pockets."  Melanie reported that when asked to play "pockets," Jennifer started taking off her pants.  Melanie later concluded that "pocket" meant "penis," and a forensic interview was conducted with Jennifer.  According to police records, during the interview it was clear that Jennifer did not understand the questioning, and the only information Jennifer provided regarding any type of sexual behavior was that her brother had seen her private parts and had touched her there.

¶13    Police interviewed the bus driver, who adamantly denied any sort of sexual contact with Jennifer, reported that there was another student on the bus at the time, and suggested that police check the bus GPS records.  GPS records disproved Melanie's claim that Jennifer had been dropped off twenty minutes late

---

[4] The State frames the forfeiture argument in terms of judicial estoppel. We reach no conclusion regarding the applicability of that doctrine, which applies when a litigant takes inconsistent positions in judicial proceedings. *See State v. Michels*, 141 Wis. 2d 81, 414 N.W.2d 311 (Ct. App. 1987).

or that the bus had been parked off-course. Police then closed their investigation, finding the allegations unsubstantiated. In the interim, Melanie had taken Jennifer for a sexual assault examination, and she made another report about the incident approximately one month after the investigation had been closed.

¶14 Presented with this evidence, the circuit court applied the admissibility criteria for other-acts evidence set forth in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). The court observed the evidence was being proffered to demonstrate that Jennifer was making a report of sexual assault against Stryker that was incited by Melanie's actions on previous occasions and to demonstrate that Melanie had a propensity for reporting sexual assaults. The court found this purpose was not acceptable, nor was the evidence relevant, given that Jennifer had confirmed Melanie's accusation against Stryker, unlike Melanie's report about the bus driver.

¶15 The circuit court determined, however, that the bus driver incident could become admissible during trial if facts developed that showed Jennifer had been prompted by her mother to make the allegation against Stryker, or if there was "some suggestion that the child was … making the report in order to please … or to placate her mother or in some way to obey or do something at the suggestion of her mother." The court also expressed concern that, even if the evidence was proffered for an acceptable purpose and relevant, the matter could become a "mini trial" unless the questioning or witnesses could be limited in some fashion.

¶16 We review a circuit court's determination regarding the admissibility of other-acts evidence for an erroneous exercise of discretion. *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399. Under that standard, we will uphold the court's evidentiary ruling if the court examined the relevant facts,

applied the proper legal standard, and used a demonstrated rational process to reach a reasonable conclusion. *Id.*

¶17    We conclude the circuit court did not erroneously exercise its discretion when refusing to admit evidence regarding the bus driver incident. Even if, as Stryker contends, the evidence was proffered for an acceptable purpose under WIS. STAT. § 904.04(2), to be relevant, the evidence would have to have had some tendency to make any fact of consequence to the determination of the action more probable or less probable. *See* WIS. STAT. § 904.01. Stryker contends that "fact" here was whether Jennifer was lying about Stryker sexually assaulting her, and he contends the relevance of the bus driver incident to Jennifer's credibility was in showing that Jennifer had a motive to "make this false accusation … to satisfy her hypervigilant mother."

¶18    To establish relevance, Stryker assumes the bus driver evidence would have made Jennifer's allegation against him less credible, even though in the prior instance Jennifer had refused to corroborate her mother's supposedly contrived allegations. Stryker merely offers the conclusory assertion that "[g]iven [Jennifer]'s young age, it is unreasonable to believe her report wasn't influenced by her mother." We decline to conclude the circuit court erroneously exercised its discretion on such a speculative basis.

¶19    Moreover, even if we assume the bus driver evidence had some marginal relevance to an assessment of Jennifer's credibility, the circuit court's concerns regarding a trial within a trial are well taken. Presenting the bus driver evidence would have required a diversion from the issue at trial—whether Stryker had inappropriately touched Jennifer—into a lengthy inquiry into the circumstances of the bus driver incident, including what Melanie reported to

police, social workers, medical personnel, and others; whether Jennifer had in fact made the statements that Melanie reported; why Jennifer did not make similar statements during her forensic interview in that case; and what the police investigation revealed. The court reasonably concluded that whatever marginal probative value the evidence had regarding Jennifer's credibility was outweighed by the considerations specified in WIS. STAT. § 904.03.

¶20 Stryker next argues the circuit court erred by refusing to admit the evidence that, during Jennifer's forensic interview in connection with the bus driver incident, she had said that her brother had seen her private parts and touched her there, and she had seen her brother's "pocket." Police declined to follow up on Jennifer's report after Melanie said she had no concerns because the brother used the bathroom with the door open and had helped change Jennifer's diapers. Analyzing the admissibility of the evidence under WIS. STAT. § 972.11, the court concluded that because Melanie had no concerns, "it could have very well meant that it occurred in a relationship between siblings, and that she didn't feel that it was a problem or false, but rather something that could have been handled within the family."

¶21 Again, we cannot conclude the circuit court erroneously exercised its discretion. Although Stryker contends the court's analysis was insufficient, we are obliged to search the record to determine whether the exercise of discretion can be sustained. *See* *McCleary v. State*, 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). Before admitting evidence of a complainant's prior untruthful allegation of sexual assault, the circuit court must first determine whether the evidence fits within WIS. STAT. § 972.11(2)(b)3. *State v. Ringer*, 2010 WI 69, ¶29, 326 Wis. 2d 351, 785 N.W.2d 448. This requires the court to determine that a jury could reasonably find that the complainant made prior untruthful allegations of sexual assault. *Id.*, ¶31.

¶22    Here, the circuit court clearly did not believe that a jury could conclude the four-year-old Jennifer's statement about her brother touching her private parts during the January 25, 2013 forensic interview constituted a false report of a sexual assault. The police record of the interview states that it "was quite apparent" that Jennifer did not understand the questions posed to her. Melanie offered plausible explanations for why Jennifer said her brother had seen and touched her private parts (i.e., changing her diaper), as well as why Jennifer said she had seen her brother's private parts (i.e., his using the bathroom with the door open). It is not even clear from Stryker's motion that Jennifer suggested the touching was of a sexual nature; she was simply asked whether anyone had touched her vagina.

¶23    Finally, Stryker argues the circuit court's refusal to admit evidence regarding the bus driver incident or Jennifer's allegations about her brother deprived him of his constitutional right to present a defense. We determine as a matter of constitutional fact whether the exclusion of evidence offered by a defendant violated the constitutional right to present a defense. *State v. Muckerheide*, 2007 WI 5, ¶18, 298 Wis. 2d 553, 725 N.W.2d 930. Under that standard, we accept the circuit court's findings of historical fact unless they are clearly erroneous, but we independently apply constitutional principles to those facts. *Id.*

¶24    A defendant's right to present a defense is not unlimited and may be abridged by rules of evidence, as long as those rules are not arbitrary or disproportionate to the purposes they are designed to serve. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Stryker does not present any argument that the application of the rules of evidence in this case produced arbitrary results or that they operated in a fashion that was disproportionate to their purpose. Rather,

10

he suggests that without introducing evidence of the bus driver incident and Jennifer's statement about her brother, he could not advance his theory of defense—that Jennifer had fabricated the allegations to please her hypervigilant mother.

¶25　The appellate record shows that, despite being precluded from introducing that evidence, Stryker had the opportunity to present his defense. *See Muckerheide*, 298 Wis. 2d 553, ¶42. Most importantly, he was able to successfully introduce at trial the social worker's opinion that Melanie, who reported the assault to CPS, was "hypervigilant regarding sexual abuse."[5] Additionally, Stryker established through cross-examination that Melanie was the person to call the police and CPS, a point Stryker emphasized during his closing argument when he also noted certain inconsistencies in Jennifer's descriptions of the sexual assault. In all, the evidence at trial allowed Stryker to argue that the circumstances of the alleged assault were implausible, the allegations lacked the substantiation of a high-quality forensic interview, and that Jennifer's description of the assault had been "tainted by her mother's influence." We agree with the State that Stryker's constitutional right to present a defense was not violated merely because he was unable to marshal all the evidence he hoped in favor of his defense theory.

## II. Mistrial Motion

¶26　Stryker next argues the circuit court erred by denying his motion for a mistrial. Typically, a motion for a mistrial lies in the circuit court's discretion.

---

[5] Notably, the circuit court relied on Stryker's constitutional right to present a defense to justify the admission of that evidence.

11

*State v. Hampton*, 217 Wis. 2d 614, 621, 579 N.W.2d 260 (Ct. App. 1998). However, Stryker also argues that the attire and conduct of the members of the Guardians of the Children deprived him of his right to a fair trial. We independently determine whether Stryker's constitutional right to a fair trial was violated. *See id.*

¶27     Stryker relies primarily on *Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990). The United States Supreme Court subsequently cast doubt on *Norris* when it noted that "the effect on a defendant's fair-trial rights of … spectator conduct … is an open question in our jurisprudence." *Carey v. Musladin*, 549 U.S. 70, 76 (2006). But even assuming that state-actor cases like *Holbrook v. Flynn*, 475 U.S. 560 (1986) are applicable, the question is whether the attire and conduct of the spectators created an unacceptable risk of impermissible factors coming into play. *Carey*, 549 U.S. at 75.

¶28     Here, the appellate record includes too little information for Stryker to meet this standard. Although it appears that some members of the jury may have been present in the cafeteria at the time Jennifer was escorted by members of the Guardians of the Children, it is unclear how many of them were there, what they might have seen before the prosecutor escorted Jennifer to his office, and whether any of the group's patches or emblems were visible from where the jurors were standing (or sitting in the courtroom).[6]   On the morning of the trial, the

---

[6] Stryker's postconviction counsel posited that such information was unnecessary to determine whether there was an unacceptable risk of improper influence. Under the circumstances of this case, which apparently did not involve plainly and obviously improper attire visible to everyone in the courtroom, we disagree.

circuit court stated that it could not read what any of the patches said from a distance of approximately thirty feet away.

¶29 Moreover, the prosecutor was amenable to a jury instruction and offered to work with defense counsel to craft a "tailored instruction" that told the jury the public had the right to express their views but emphasized the presumption of innocence that attaches to a defendant. Stryker's defense counsel did not request an instruction, thereby depriving the circuit court of an opportunity to consider whether alternatives to a mistrial would be appropriate. *See **State v. Moeck***, 2005 WI 57, ¶43, 280 Wis. 2d 277, 695 N.W.2d 783. Accordingly, we cannot conclude on this record that the court erred by denying Stryker's request for a mistrial or that Stryker was deprived of a fair trial as a result.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.